THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STELLA VODA, Defendant-Appellant.

First District (2nd Division)   No. 77-1670

Opinion filed March 27, 1979.

James J. Doherty, Public Defender, of Chicago (Timothy P. O'Neill and Thomas W. Murphy, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ann Callum, and Thomas Brucker, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

In a jury trial in the circuit court of Cook County, defendant Stella Voda was found guilty of the offense of battery. (Ill. Rev. Stat. 1975, ch. 38, par. 12—3(a)(1).) A judgment of one year's probation was entered on the verdict. Defendant appeals her conviction contending: (1) she was not proved guilty of battery beyond a reasonable doubt; (2) improper comments made by the prosecution during cross-examination denied her a fair trial; and (3) the trial court improperly refused to give defendant's instruction defining the crime of battery.

The incident occurred at approximately 7:30 p.m. on July 4, 1976, while complainant JoAnn Diorio and her husband John Diorio (hereinafter Mr. Diorio) were having a barbeque. Mr. Diorio explained

that his house faced west and had front steps leading up to a porch. He stated that he placed the grill just east of the public sidewalk running in front of his house so that while standing behind it he faced his house. Mr. Diorio stated that Anthony Kaunas lived next to him on the north side and to the north of Kaunas was defendant's house.

While standing behind the grill, Mr. Diorio testified that he saw defendant, who was standing on Kaunas's property, throw a bottle which shattered on the pavement in front of the porch steps where those present at the barbeque, including his wife, were sitting. He observed his wife go over to Kaunas's property and heard some yelling. As he ran over in that direction, he saw defendant grab his wife's hair and pull her to the ground. He testified that when he arrived, defendant was straddling his wife's chest, with her hands around his wife's throat, and was bouncing his wife's head on the concrete. Mr. Diorio grabbed defendant by the hair and the back of her shorts when defendant failed to release his wife. The defendant's wig came off and her shorts "broke." He then grabbed defendant by the shoulders, pulled her off his wife, and pushed her against Kaunas's house. He helped his wife up and accompanied her home. He denied doing anything else to the defendant. He testified that he returned to the scene to look for his wife's glasses which defendant removed during the altercation, and found a section of his wife's hair on the sidewalk. He did not recall seeing a garden hose in defendant's yard.

Complainant testified that while sitting on the front porch steps of her house, she saw defendant walk out of a passageway separating defendant's house from Kaunas's house, and throw a bottle which landed in front of the porch steps, shattering in all directions. After checking to see if anyone was hurt, she walked over to the defendant to find out "what she thought she was doing." Defendant was standing on her own property just on the other side of a gate which was between defendant's property and Kaunas's property. Defendant then grabbed complainant by the back of her hair, and pulled her over the gate which fell underneath them. Defendant landed on top of her. The complainant heard her husband tell the defendant to take her hands off his wife, then her husband pulled defendant off of her and escorted her back to their own yard. Complainant testified that she had red marks on her throat, a bump on her head, and missed the glasses she was wearing when she walked over to the defendant. She also testified that she did not see her husband hit or kick the defendant and did not see a garden hose in the defendant's yard.

Joseph Kalenowsky, who lived to the north of defendant, testified that on July 4, 1976, at about 7:30 p.m., he was talking to his neighbor to the north who was setting off fireworks in front of his property when he heard glass shatter. At first he did nothing, but then he heard hollering and a commotion so he went to investigate. He observed defendant and the

complainant on the ground in defendant's yard and Mr. Diorio was there trying to separate them. After they were separated, he observed defendant run into her house. He did not see Mr. Diorio strike defendant nor did he see him grab her by the hair. He found the struggle confusing but remembered that the complainant and defendant were lying side by side. He could not say whether defendant was on top of the complainant. He testified that he did not see a garden hose on defendant's property at that time but knew that defendant usually had one on her property.

The defendant testified in her own behalf. She stated that she was home alone on July 4, 1976, when between 7 and 8 p.m., she saw some firecrackers land in her front yard. Noticing smoke, she turned on her water hose and went outside to extinguish what she said might have been a fire. After spraying her plants, she checked her front lawn where she had laid new sod. As she was returning to her house, a bottle coming from a southern direction landed at her feet on the grass of her neighbor to the south. She picked it up and hurled it back in a southern direction. She was walking to her house by way of the gangway between her house and her neighbor to the south when complainant approached her and said, "leave my man alone," and then began hitting defendant on the head with her fists. According to defendant, she responded, "what do you mean my man" and removed complainant's glasses in hopes this would cause blurred vision and stop the complainant from attacking her.

At this point, defendant said Mr. Diorio entered her yard and called her obscene names. He then grabbed her by the hair, knocked her down, pounded her head on the sidewalk, and kicked her. He took the garden hose and, putting his thumb on the base, shoved it down her throat causing water to spray on her chest. Defendant heard complainant tell her husband that defendant had had enough and to leave her alone. Defendant testified that Mr. Diorio took the hose out of her mouth but began making racial slurs while tearing off her bra. Defendant stated that she got up, went into her house, and tried to call the police but got a busy signal. She then called her sister who gave her the number for the fire department. While looking out of her window, defendant said she saw and heard Mr. Diorio threatening her and saying she was going to pay for his wife's glasses. She also stated that Anthony Kaunas was there waving his hands and shouting racial slurs. She testified that after talking with Cathy Byrne, a family friend who came to the house after the altercation, she went to the hospital where she was examined, X rays were taken, and she was given medication before returning home that night. On cross-examination, defendant denied grabbing complainant by the hair and choking her, and stated that she did not actually see anyone throw the bottle.

Cathy Byrne testified that at about 9 p.m., she went to defendant's

house to visit defendant's daughter. When she arrived, she saw people in the front yard looking for something and noticed the garden hose was on. She stated that complainant told her they were looking for her glasses and asked her if she would look in the house for them. Upon entering the house she saw defendant doubled up, her face puffy and red. According to Ms. Byrne, defendant told her she had been beaten up, mentioning the names of Mr. Diorio and Kaunas. Ms. Byrne observed defendant call the fire department for an ambulance, change her clothes, and later leave in an ambulance. She also testified that at the request of the police who arrived at the scene, she turned off the garden hose. On cross-examination she stated that she did not notice whether defendant's clothes were wet or her blouse torn.

Diane Voda, the daughter of the defendant, testified that she returned home from a friend's house at about 1:30 a.m. on July 5, 1976. She went to Mr. Diorio and asked what had happened. He told her he was having a barbeque with sausage, beer, and fireworks. He showed her a piece of broken glass from a Royal Crown cola bottle which he said her mother threw. She testified that no one in her family drank Royal Crown cola. She noticed soda bottles, broken glass, and the remains of fireworks on his front lawn.

Steven Weinger, a law student and working for the Criminal Defense Consortium, testified that he talked with Mr. Diorio after the incident. At their first meeting in July 1976, Mr. Diorio told him that a fight occurred between the defendant and his wife; that he went over to break it up; that he pulled defendant's hair and her wig came off; that he pulled her by her real hair and slammed her against the concrete. Weinger testified that he transcribed notes after this meeting, which indicated the following: "Threw her against a wall (pavement?)." Weinger stated that he was not sure if Mr. Diorio meant the pavement or a wall when he said he threw defendant against the concrete. The word concrete did not appear in Weinger's notes. Weinger also testified that Mr. Diorio said he was on his front porch when the bottle was thrown and when his wife went to the defendant's yard.

Anthony Kaunas, called in rebuttal on behalf of the State, testified that he lived in the house between defendant and the Diorios. He stated that on July 4, 1976, he did not go into defendant's yard or wave his arms and shout obscenities at the defendant. He stated that he physically could not have waved his one arm since his elbow was broken at that time. He further testified that he never said anything to the defendant that day, even when she knocked his sprinkler over, but that he did call the police.

Defendant's motion for a new trial was denied and a timely notice of appeal was filed.

## I.

Defendant first contends she was not proved guilty of battery beyond a reasonable doubt. Defendant points out inconsistencies between Mr. Diorio's testimony at trial and at the preliminary hearing as to whether defendant grabbed his wife by her throat or by her hair, whether he grabbed defendant by the arm and leg or by the shoulders, and whether or not he accompanied his wife home after the altercation. When confronted with these inconsistencies at trial, Mr. Diorio testified that questions on different and separate incidents involving defendant were asked of him at the preliminary hearing, and he was often confused as to which incident the question was directed.

Defendant argues that Mr. Diorio could not have seen defendant throw the bottle or the initial confrontation since he told defense witness Weinger he was on the front porch when these events occurred, and the photographs introduced into evidence showed that these events could not be viewed from his front porch. This must be contrasted against Mr. Diorio's testimony that he was standing behind the grill in front of his house when the events occurred.

In support of the theory that she was the victim and not the aggressor in the altercation, defendant argues that Kalenowsky, the State's witness, testified that as soon as he heard the bottle break, he walked toward defendant's house and observed complainant and defendant either lying side by side or complainant on top of defendant. However, the record indicates that Kalenowsky did not proceed toward defendant's yard immediately. He testified that when he did arrive, he saw Mr. Diorio trying to separate the women. He stated that he did not see Mr. Diorio strike the defendant nor place a garden hose in defendant's mouth. Nowhere in the record does Kalenowsky testify he saw complainant on top of defendant, rather he stated that they were on the ground side by side, and he could not remember whether he ever saw defendant on top of complainant.

As to complainant's testimony, defendant argues, it is unbelievable that defendant, a 50-year-old woman, could overpower complainant, a 32-year-old woman, pull her over a 30″ high fence with one hand, and bang her head on the pavement. There was testimony, including that of defendant, that the gate was broken and not attached to its posts. It is a logical inference that when the gate was knocked in the altercation, it could have fallen over and underneath the complainant. Obviously the jury was in the best position to determine whether defendant had the strength to perform the acts alleged. By their verdict they rejected defendant's theory.

■■ These and other inconsistencies upon which defendant relies do not

detract from the reasonableness of complainant's story but rather go to the question of credibility, the resolution of which is for the jury's determination. (*People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733.) Only where the evidence is so improbable as to raise a reasonable doubt of guilt will a reviewing court disturb the jury's determination of guilt. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313.

■■ Complainant's testimony was substantially corroborated by two eyewitnesses, while defendant's testimony was corroborated in part by testimony of those not present at the scene. The record indicates that defendant's testimony was often unresponsive and disconnected. We do not find complainant's version of the incident so improbable as to raise a reasonable doubt of defendant's guilt. Based on the record, it is our opinion that there is sufficient credible evidence, which if believed by the jury, supports the verdict.

## II.

Defendant next contends that certain questions asked by the prosecution during its cross-examination of defendant and defense witness Byrne denied her a fair and impartial trial.

These incidents relate to rhetorical remarks by the prosecutor during the cross-examination. Defendant contends that these remarks when viewed together indicate improper conduct with the prosecution insinuating that defense attorneys told defendant what not to say which resulted in prejudice incurable by judicial admonitions.

■■ Reversal is not warranted unless it appears that improper remarks complained of influenced the jury in a manner that resulted in substantial prejudice to the accused. (*People v. McCorry* (1972), 51 Ill. 2d 343, 350-51, 282 N.E.2d 425; *People v. Taylor* (5th Dist. 1977), 53 Ill. App. 3d 810, 817, 368 N.E.2d 950.) The verdict will not be disturbed where the improper remarks do not constitute a material factor in the conviction, or they are of such a minor character that prejudice to the defendant is not their probable result. (*People v. Jayne* (1st Dist. 1977), 52 Ill. App. 3d 990, 1009, 368 N.E.2d 422.) We have examined the cases relied upon by defendant but find them inapposite on their facts. We have reviewed each of the incidents complained of. In each instance, upon objection, the trial court sustained the objection and took corrective action. In our opinion, where viewed as part of the total record, we cannot say that such questions resulted in prejudice to the defendant.

## III.
### A.

Lastly, defendant contends the jury was improperly instructed on the offense of battery. The following instruction on battery was read to the jury:

"A person commits the crime of battery who by any means knowingly or intentionally causes bodily harm to another person."

This instruction is Illinois Pattern Jury Instruction, Criminal, No. 11.05 (1968).

Defendant argues that this instruction was incomplete because it did not contain the phrase "without legal justification" as does the statutory definition of battery pursuant to section 12—3(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—3(a)(1)) which provides:

"A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual * * *."

In response, the State argues that defendant is barred from raising this alleged error on review because of a failure to properly preserve the record pursuant to section 67(2) of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 67(2).) Section 67(2) provides in pertinent part: "The originals and copies of all instructions, whether given, modified or refused, shall be filed as a part of the proceedings in the cause." Section 67(2) is made applicable to criminal cases by Supreme Court Rule 451(c). Ill. Rev. Stat. 1977, ch. 110A, par. 451(c).

Only those instructions as actually read to the jury by the trial judge were included in the record on appeal. The record also includes a transcript from the conference on jury instructions as well as a transcript from the proceedings on defendant's motion for a new trial, from which it can be determined that the state submitted the instruction on battery and the defense objected on the same grounds alleged on appeal.

■■■ While a court is justified in its refusal to review alleged errors in jury instructions based upon noncompliance with section 67(2) (*People v. Daily* (1968), 41 Ill. 2d 116, 121, 242 N.E.2d 170; *People v. Walker* (2d Dist. 1977), 52 Ill. App. 3d 510, 516, 367 N.E.2d 723), some courts have not applied the waiver rule when circumstances justify it (*People v. Looney* (1st Dist. 1977), 46 Ill. App. 3d 404, 408-09, 361 N.E.2d 18). Regardless of whether there was compliance with Rule 67(2), defendant's argument must fail on its merits. The phrase "without legal justification" is not an essential element of the crime of battery and its inclusion in the battery instruction is not necessary. (*People v. Looney*, at 410; *People v. Mills* (2d Dist. 1978), 58 Ill. App. 3d 300, 302-03, 374 N.E.2d 233; *People v. Worsham* (1st Dist. 1975), 26 Ill. App. 3d 767, 771, 326 N.E.2d 134; *People v. Hussey* (4th Dist. 1972), 3 Ill. App. 3d 955, 279 N.E.2d 732, *aff'd sub nom. People v. Harvey* (1973), 53 Ill. 2d 585, 589, 294 N.E.2d 269.) As this court said in *Looney*, at page 410, the "phrase is not an essential element of the crime of battery, and it is defendant's burden to raise legal justification as an affirmative defense and to tender instructions which bear favorably upon an applicable defense."

### B.

As an alternative argument in support of its contention that the instruction submitted to the jury on battery was proper, the state argues that jury instructions should be considered as a whole, and that when so considered, the jury was adequately instructed on the issue of legal justification setting out the two instructions given on this issue. The record contains those instructions as read orally to the jury by the trial judge and appear in the record as follows:

"A person is justified in the use of force if she initially provokes the use of force against herself with the intent to use that force as an excuse to inflict bodily harm upon the other person."

"A person is not justified in the use of force if she initially provokes the use of force against herself with the intent to use that force as an excuse to inflict bodily harm upon the other person."

The instructions are worded exactly the same with the exception of the word "not" appearing in the latter instruction. The latter instruction is Illinois Pattern Jury Instruction, Criminal, No. 24.11 (1968). The former instruction is obviously erroneous and directly conflicts with the latter instruction. This error apparently went unnoticed by both parties since it was not argued in the briefs. At oral argument, this court brought the error to the attention of both attorneys, yet no explanation was offered nor argument made by the defense regarding the error. From what we can determine from the record we can only assume that these instructions were read to the jury as they appear in the record. We feel compelled to discuss this conflict even though the parties disregarded the matter in their briefs and oral arguments.

Conflicting instructions may constitute reversible error especially if they pertain to an essential element of the case. (*People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532.) An instruction misstating the law cannot be remedied by one that states it correctly. (*People v. Miller* (1949), 403 Ill. 561, 565, 87 N.E.2d 649.) Reversal is required since it cannot be determined whether the jury followed the correct or the erroneous instruction. *People v. Gilday* (1932), 351 Ill. 11, 21, 183 N.E. 573; *United States v. Donnelly* (7th Cir. 1950), 179 F.2d 227, 233.

An instruction not objected to at the trial court level operates as a waiver of any such objection on appeal. (*People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227.) Further, points not argued on appeal are waived. (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7); *People v. Suggs* (1st Dist. 1977), 50 Ill. App. 3d 778, 782, 365 N.E.2d 1118.) In the recent case of *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664, the Illinois Supreme Court admonished the appellate court for reversing the trial court's judgment on grounds neither raised nor argued by the parties. The court stated that while a reviewing court will examine a record for

the purpose of affirming a judgment, it should not normally search the record for unargued and unbriefed reasons to reverse a trial court judgment.

In criminal cases, however, the waiver rule may be modified in certain situations whenever necessary to preserve defendant's right to a fair trial. (*People v. Underwood* (1978), 72 Ill. 2d 124, 130, 378 N.E.2d 513; *People v. Burson* (1957), 11 Ill. 2d 360, 370-71, 143 N.E.2d 239.) In situations involving fundamental fairness and denial of a fair trial, it has been held that a court bears a duty to instruct on its own motion. (*People v. Davis* (1st Dist. 1966), 74 Ill. App. 2d 450, 221 N.E.2d 63.) In *Davis*, defendant was convicted of attempt to commit robbery. The jury was instructed as to the statutory definition of the crime of attempt but was given no instruction as to the elements of robbery. It was not until oral argument in the appellate court that defendant argued the jury had not been properly instructed as to the elements of the crime charged. The defendant was allowed to file an addition to his appellate brief. This court held that to leave the jurors to their own conjecture as to the elements of the alleged crime constituted fundamental error and was so prejudicial to defendant as to cause reversal.

■■ ■ Supreme Court Rule 615(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." More specifically, Rule 451(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 451(c)) provides that substantial defects in instructions are not waived by failure to make timely objections if the interests of justice so require. Illinois law has placed a dual burden on a defendant who under Rule 451(c) seeks to avoid waiver in a reviewing court for failure to make an objection. The defendant must establish that the defect in the instruction is substantial and that the giving of the instruction resulted in a denial of justice and a fair trial. (*People v. Price* (4th Dist. 1968), 96 Ill. App. 2d 86, 95, 238 N.E.2d 881; *People v. Tillman* (1st Dist. 1977), 48 Ill. App. 3d 594, 597, 363 N.E.2d 109.) By not raising the question on appeal, defendant in the present case obviously did not sustain this burden.

In its recent decision in *People v. Roberts* (1979), 75 Ill. 2d 1, 14, 387 N.E.2d 331, 337, the Illinois Supreme Court discussed the waiver rule at length and stated:

> "[T]he provision of our Rule 451(c) constitutes an exception which, under the prior decisions of this court, is a limited exception (*People v. Underwood* (1978), 72 Ill. 2d 124, 129-30), to be used to correct 'grave errors' (*People v. Jenkins* (1977), 69 Ill. 2d 61, 66), or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed (*People v. Joyner* (1972), 50 Ill. 2d 302, 307)."

The court went on to say that the exception "is applicable only to serious errors which severely threaten the fundamental fairness of the defendant's trial." 75 Ill. 2d 1, 15, 387 N.E.2d 331, 337-38. '

In *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532, defendant was convicted of attempt murder. Both the State's and the defendant's instructions on attempt murder were submitted to the jury. Defendant's instruction informed the jury that before defendant could be found guilty of attempt murder, the state had to prove that defendant was not justified in using the force which he used. The State's instruction did not include this element. Defendant did not object to the State's instruction at trial but urged on appeal that the instructions were conflicting and constituted a substantial error justifying relaxation of the waiver rule under Rule 451(c). In reversing the conviction, the supreme court held that where there are two separate issue instructions, one proper and the other erroneous, each inconsistent with the other, Rule 451(c) is applicable. The court stated the following in reaching its conclusion:

"In our judge-and-jury system it is the duty of the court to inform the jury as to the law. * * *

But where the instructions are contradictory, the jury cannot perform its constitutional function. This inability is the fault of the court, whose duty it is to give the jury proper guidance, not to generate confusion, as was the case here. It is well established that the giving of contradictory instructions on an essential element in the case is prejudicial error, and is not cured by the fact that another instruction is correct. While it is true that an instruction may be inaccurate, and other instructions may remove this error, such cannot be so when the instructions are in direct conflict with one another, one stating the law correctly and the other erroneously. This is particularly true where the instruction defines the issues in the case or is mandatory in character. [Citations.]

Where the instructions are contradictory the jury is put in the position of having to select the proper instruction—a function exclusively that of the court." 69 Ill. 2d 61, 66-67.

■■ In *Jenkins*, although there was a failure to object to the State's instruction at trial, defendant did raise the issue on appeal. In the present case, defendant failed to object at trial, raise the issue in a post-trial motion, in its appellate brief, or at oral argument. In such a situation, the issue is waived notwithstanding the plain error exception of Rule 615(a). *People v. Coles* (1978), 74 Ill. 2d 393, 397.

■■ Also the court in *Jenkins* specifically stated that defendant might have been convicted on the basis of the erroneous instruction. However, in the instant case, it could only be to defendant's advantage if the jury relied on the erroneous instruction. We are unaware of any case where an

inconsistent instruction was held to be fatal in the absence of some possible prejudice to the accused. See 23A C.J.S. *Inconsistent and Contradictory Instructions* §1307, at 747 (1961).

In *People v. Burnett* (1st Dist. 1975), 35 Ill. App. 3d 109, 120-21, 341 N.E.2d 86, this court felt compelled to point out a misleading instruction apparently not questioned by the parties on appeal, but concluded that since the instruction had the effect of increasing the State's burden of proof, no prejudice could have resulted to the defendant.

Based on the circumstances in the present case, we do not find the error so fundamental or prejudicial to the defendant as to abrogate the waiver rule and require us to decide the issue on our own motion.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.