THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PETER A. GORDON, Defendant-Appellant.

First District (5th Division)   No. 83—3017

Opinion filed October 5, 1984.

---

*This opinion was adopted as the opinion of the court prior to the retirement of Justice Goldberg.

Julius Lucius Echeles, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Cuomo, Jane E. Liechty, and Erin J. Jennings, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendant, Peter Gordon, following a bench trial, was found guilty of possession of a controlled substance (cocaine) with intent to deliver and was sentenced to a prison term of 12 years. He appeals, contending that: (1) he was not proved guilty beyond a reasonable doubt; (2) the trial court improperly restricted his cross-examination of the only prosecution witness; (3) the trial court erred in denying his motion for a new trial based on the alleged failure of the State to inform him of a Federal investigation concerning the State's witness; (4) the search warrant authorizing the search of his home was over-broad; and (5) his sentence was excessive. We reverse and remand for a new trial.

Acting pursuant to a search warrant, Chicago police officers entered the first-floor apartment at 3229 North Seminary Street in Chicago, where defendant resided. The warrant directed the police to search the "entire 1st floor apartment at 3229 No. Seminary Ave., Chicago, Illinois." Detective Thomas Andricopoulos and three other police officers executed the search warrant. Andricopoulos was the only witness called by the prosecution. He testified that the police gained entry to defendant's apartment by means of a ruse involving two uniformed police officers. These men handcuffed another officer

and activated the flashing blue lights on their squad car. The witness rang defendant's door bell. After defendant answered the door, the witness testified that he told defendant that the police had caught the man in the handcuffs tampering with an automobile in front of the house. Defendant opened the door and the witness identified himself as a police officer and served the warrant on defendant. The witness and three other officers entered the apartment.

At the hearing on defendant's motion to suppress, Andricopoulos described the building as a two-story brownstone building. At trial, he stated that a flight of stairs leads from the street level to a vestibule outside the front door to the first-floor apartment. A corridor extends from the front door to the rear of the apartment. On the left side of the corridor is a bedroom and on the right side is a washroom. Further down the corridor is a kitchen. Just inside the front door is an open staircase which winds down to a lower level. This lower level consisted of a large room which had been remodeled and furnished with a waterbed, a chest of drawers, a night stand, a television set, and a small bar about six feet long. A washroom was situated to the rear of this room. The other apartment on the top level of the building did not connect to this lower level.

When the officers entered the apartment they searched defendant's person but found no contraband. Defendant remained on the upper level in the custody of one of the officers while Andricopoulos and another officer searched the lower level. When the police reached the lower level, Andricopoulos observed a young man whom he identified as James Cruz sitting on the bed watching the television. The officers searched Cruz but found nothing illegal on his person. Cruz was brought to the upper level of the apartment and the police proceeded to search the lower level more thoroughly. On an open shelf behind the bar, Andricopoulos found three clear plastic bags. Two of the bags contained a white crystalline substance and the third contained green plant material. The parties stipulated that if called to testify, Mary Fitzgerald, a chemist of the Criminalistics Division of the Chicago police department, would testify that one of the bags contained 740 grams of a substance containing cocaine, that a second bag contained 312 grams of a substance containing cocaine, and that the third bag contained 21.5 grams of marijuana.

Andricopoulos testified that Cruz was 15 years old, was about "five feet six inches" tall, and that there was indication that Cruz lived in the building. Andricopoulos testified that he recovered the following items from the chest of drawers in the lower level: a traffic bureau violation listed in the name of "Peter Dordin, 3700 North

Paulina, Chicago, Illinois," with a change of address sticker marked "Peter Gordin, 3229 North Seminary, first floor"; a check in the name of Peter A. Gordin, 3229 North Seminary, Chicago, Illinois; and a notice of statement for services marked Peter Gordin, 3229 North Seminary, Chicago, Illinois, for $53 for services rendered. Andricopoulos also testified that he found clothes in some closets on the lower level and that the clothes were too large for Cruz.

On cross-examination, defense counsel attempted to question Andricopoulos concerning his reasons for failing to charge Cruz with any crime. Specifically, defense counsel sought to ask the witness whether he had learned that Cruz' mother was a police officer and whether the witness had allowed Cruz to be released after the witness had talked with his mother. The trial court sustained the prosecution's objections to these questions on the ground of relevance. On cross-examination, Andricopoulos admitted that his police report did not mention the presence of any person in the apartment other than defendant.

Defendant testified in his own behalf. He stated that he lived at 3229 North Seminary and was employed by an advertising agency at a salary of $650 per week. He testified that shortly before the police arrived at his house, Cruz, whom he had known for several years and whom he described as 19 years old and "six feet six inches" tall, arrived at defendant's apartment carrying a package wrapped in brown paper. The two men talked for about an hour and then they heard a loud knocking on the door and someone shouted, "[O]pen you, police." Cruz looked surprised and ran down to the basement with his package. Defendant stated that he then went to the front door and let the police inside. The police went downstairs, brought Cruz back up in handcuffs, made a telephone call and then released Cruz. Defendant denied ever having cocaine in his apartment, denied ever selling or using cocaine, and denied any knowledge of the cocaine found in the apartment.

On rebuttal, Andricopoulos testified that he did not find any brown paper near the contraband or anywhere else in the lower level of the apartment, that he did not hear any furtive movement in the lower level, and that Cruz, though frightened, was not perspiring.

The parties stipulated that defendant was placed on probation in Ohio on December 10, 1976, that probation was revoked on July 21, 1977, and that defendant served 22 months of a 1- to 10-year sentence. After hearing arguments of counsel, the trial court found defendant guilty of possession of a controlled substance with intent to deliver and possession of a controlled substance and entered judgment on the former finding.

Defendant filed a motion for a new trial which alleged, *inter alia,* that the State's Attorney had knowingly concealed the pendency of a Federal investigation of Andricopoulos. At the hearing on the motion, the prosecutor denied any knowledge of the investigation. Defense counsel stated that the investigation was a "secret investigation," which he had learned about from a television news program and whose existence had been corroborated by the United State's Attorney's office. The trial court denied the motion.

At the sentencing hearing, both sides presented arguments and a presentence investigation report was received. The trial court sentenced defendant to 12 years for the offense of possession of a controlled substance with intent to deliver. Defendant appeals.

Opinion

We first consider defendant's argument that the search which resulted in the seizure of the contraband was beyond the scope of the warrant and that therefore the trial court erred in denying defendant's motion to suppress. The warrant directed the police to search the "entire 1st floor apartment at 3229 No. Seminary Ave., Chicago, Illinois." Defendant contends that because the warrant specified the "first floor" apartment, the contraband, which was found on the lower level of the apartment, was illegally seized.

■ The test for determining the validity of a search where a variance is claimed to exist between the area described in the warrant and the area actually searched is whether the warrant set forth as sufficiently as possible a description which would enable a police officer using reasonable efforts to identify the area to be searched with the requisite degree of certainty. (*People v. Curry* (1973), 56 Ill. 2d 162, 172, 306 N.E.2d 292.) In the instant case, the warrant specified that the "entire" first-floor apartment be searched. Defendant argues that because the warrant specified the first-floor apartment, any areas within that apartment which were not on the first floor were outside the scope of the warrant's authorization. We reject this contention on several grounds. First, defendant's argument ignores the inclusion in the warrant of the word "entire." From the context of the warrant and the officers' observation of the building, the lower level of defendant's apartment was included within the authorized ambit of the search. "The obvious purpose of designating the entire first floor premises in the warrant was not to limit the search *literally* to the first floor, but to identify the area to be searched and to distinguish it from the separate second-story dwelling. Any reasonable reading of the warrant indicates that it most certainly authorized the

search of a structure or portion which was part and parcel of the first floor premises ***." (*Rainey v. State* (1976), 74 Wis. 2d 189, 205, 246 N.W.2d 529, 535 (holding that warrant which directed a search of an "entire first floor premises of shoe shine parlor" (74 Wis. 2d 189, 201, 246 N.W.2d 529, 534) also authorized search of appurtenant balcony); see also *State v. Kimble* (La. 1979), 375 So. 2d 924, 926 (warrant authorizing search of "1124 South Street, Apartment 4 *** together with all approaches and appurtenances thereto" held to justify search of basement accessible through door from indicated apartment); *State v. Stevenson* (Mo. App. 1979), 589 S.W.2d 44, 47 (warrant directing search of "the two-story, single family, brick constructed residence located at 5233 Raymond Avenue" authorized search of attic area above second story).) We conclude that the only reasonable interpretation of the warrant in the instant case is that the "1st floor" language serves to distinguish the premises to be searched from the premises comprising the second-floor apartment and that the word "entire" justified the police in searching all levels of the first-floor apartment.

The cases on which defendant relies are distinguishable. In *United States v. Higgins* (7th Cir. 1970), 428 F.2d 232, 234, the search warrant authorized the search of "the premises known as basement apartment building at 4432-38 South Calumet Avenue, Chicago, Illinois." The search was held illegal because there were three apartments in the basement and the police could not have determined which apartment to search until they had searched all of them. In *United States v. Votteller* (6th Cir. 1976), 544 F.2d 1355, a warrant was held void which authorized the search of an entire house where probable cause had been established as to only one floor. *United States v. Bermudez* (2d Cir. 1975), 526 F.2d 89, *United States v. Hinton* (7th Cir. 1955), 219 F.2d 324, and *United States v. Esters* (E.D. Mich. 1972), 336 F. Supp. 214, are to the same effect. In the instant case, defendant has not maintained that the lower level was not a part of his living quarters or that it was a common area or that it had been sublet to others. Nor has defendant argued that probable cause was lacking to search any area of his apartment. Accordingly, the cases cited by defendant do not persuade us that the trial court's ruling was error.

Our conclusion that the search was proper is bolstered by an examination of the rationale underlying the rule that the description must enable the police to identify the place to be searched with certainty. The controlling principle is that where probable cause to search a dwelling has been established, the search must be confined to the area as to which probable cause exists so as to avoid a search of the

wrong apartment and an infringement of the rights of others. (See *People v. Redmond* (1976), 43 Ill. App. 3d 682, 684, 357 N.E.2d 204.) In applying this rationale, some courts have held that a defendant has no standing to assert an illegal search where a warrant is asserted to be vague and the defendant's home was the only area searched and the rights of others were not infringed by the search. (See generally Annot., 11 A.L.R. 3d 1330 (1967).) Defendant does not contend that probable cause to search the lower level was lacking and, in light of the absence of a violation of the rights of others, the search was proper. Furthermore, it would be an unreasonable requirement to have the officers, upon discovering the lower level of defendant's apartment, to abandon the search and obtain an additional warrant. (See *People v. Thomas* (1979), 70 Ill. App. 3d 459, 462, 388 N.E.2d 941.) We conclude that the trial court did not err in failing to suppress the evidence.

■ Defendant next contends that he was not proved guilty beyond a reasonable doubt because another person was found in proximity to the contraband and that therefore the prosecution was required to prove that "defendant and no one else was responsible for the controlled substance." Because we conclude on other grounds that the judgment must be reversed and the case remanded for a new trial, it is therefore inappropriate for us to express an opinion as to defendant's guilt or to analyze the evidence in greater detail than necessary to resolve the issues hereinafter deemed dispositive. (See *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295; also see *People v. Lyons* (1976), 44 Ill. App. 3d 802, 358 N.E.2d 1183.) The appellate court, however, has a duty to address a defendant's reasonable-doubt contention so as to avoid placing defendant in double jeopardy upon a retrial. (*People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366.) Our review of all of the evidence introduced at trial leads us to conclude that there was sufficient evidence introduced to avoid the proscription against double jeopardy. Nevertheless, this conclusion in no way implies that we have made a finding as to defendant's guilt which would be binding on the circuit court on retrial. On retrial, defendant is entitled to the presumption of innocence. *People v. Thompson* (1979), 75 Ill. App. 3d 901, 906, 394 N.E.2d 422.

The deferential standard of review which is accorded a trial court's findings of facts, however, necessitates strict scrutiny of the trial court's limitation on defendant's cross-examination of Andricopoulos because the trial court's determination of credibility should be made in the light of all relevant information. In this context it has been held that cross-examination to show interest, bias, or motive on

the part of a witness is a matter of right, subject to the broad discretion of the trial court to preclude repetitive or unduly harassing interrogation and, assuming a proper subject matter, to control the extent of cross-examination. (*People v. Thompson* (1979), 75 Ill. App. 3d 901, 903, 394 N.E.2d 422.) In the instant case, defense counsel attempted to ascertain whether the witness was aware of the status of Cruz' mother as a police officer and whether this knowledge had influenced his actions and, perhaps, his testimony. The prosecution's objections to the line of questioning were sustained and the defense was not allowed to go into the matter at all. Because the defense was completely foreclosed from inquiry, the issue is not determinable merely by reference to the trial court's discretion which standard would apply to an evaluation of the extent of cross-examination or to repetitive or harassing interrogation. The question before us is whether the proposed cross-examination related to a proper subject matter, *i.e.,* whether the evidence of bias or motive is direct and positive, not remote and uncertain. *People v. Lenard* (1979), 79 Ill. App. 3d 1046, 1050, 398 N.E.2d 1054.

■ Defendant's theory of the case was that Cruz had brought the contraband into defendant's home without defendant's knowledge or consent. In support of that theory, defendant sought to cross-examine Andricopoulos as to whether he knew that Cruz' mother was a police officer and whether that knowledge had influenced his testimony. Further, defense counsel sought to elicit from Andricopoulos whether he had released Cruz after conducting a telephone conversation with the latter's mother. These areas of inquiry are, in our view, proper, and defendant should have been allowed to explore them. In light of Andricopoulos' status as the prosecution's only witness, discrediting his testimony was crucial to defendant's case. Precluding cross-examination on these areas is prejudicial error (see *People v. Thompson* (1979), 75 Ill. App. 3d 901, 904, 394 N.E.2d 422), which requires that the judgment of conviction be reversed and the cause remanded for a new trial. In light of the result reached, we need not discuss defendant's other assertions of error.

For the reasons stated, the judgment of conviction is reversed and the cause remanded for a new trial.

Reversed and remanded.

LORENZ and SULLIVAN, JJ., concur.