THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
VERNON R. PRATHER, Defendant-Appellant.

First District (2nd Division) No. 84—2636

Opinion filed October 29, 1985.

34

Jerome Rotenberg, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Mark L. Rotert, and Joan G. Fickinger, Assistant Attorneys General, of Chicago, of counsel), for the People.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant was found guilty in a jury trial of distribution of look-alike substances (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(b)) and was sentenced to 30-months' probation and fined $5,000 plus costs. Defendant appeals his conviction.

At trial, John Carey, an investigator for the Illinois Attorney General's office, testified that on October 27, 1982, he went with a partner to defendant's company, Midwestern Wholesale Supply Company (MWS) located at 311 North Des Plaines Avenue, Chicago. Carey met with defendant and Brian Bolggess at MWS.

Carey asked defendant if he had any of the big black capsules he had advertised in Hustler magazine. That advertisement referred to the capsules as "body stimulants." Defendant replied he sold the capsules for $50 per thousand. Carey told defendant he would take a thousand of the big black capsules.

Defendant went into a back room. When he returned, he filled out a receipt and gave Carey a bottle of black capsules. The label on the bottle indicated it was manufactured for MWS, 311 North Des Plaines, Office 101, Chicago. It was marked "Decongestant Capsules," stated the ingredients of the capsules, and contained some warnings. Mr. Carey paid defendant $53.50 for the bottle. Defendant said he appreciated the business and hoped he would see Carey again soon.

Later that same day, Carey and several law enforcement officials returned to MWS and executed a search warrant and two arrest warrants. These individuals took photographs of defendant's business premises, including shelves holding bottles of substances, and confiscated other substances and documents. Of this evidence, several of the photographs, two books, a lease, and two boxes containing pills were introduced by the State at trial.

Dr. Jorge Pirl, Assistant Chief Toxicologist for the Illinois Department of Public Health, testified at trial that he had performed an analysis of the capsules purchased by Carey. This analysis revealed that the capsules contained caffeine and phenylpropanolamine. Caffeine stimulates the central nervous system, and phenylpropanolamine acts as both a decongestant and a stimulant. He had performed an analysis of the contents of one of the capsules seized by Carey, and they also contained caffeine and phenylpropanolamine.

Dr. Pirl identified an amphetamine capsule and testified that it was a controlled substance. On cross-examination, he testified that not all amphetamines are black, that the capsule purchased by Carey and the amphetamine had different markings, and that the capsule purchased by Carey was larger.

Barry Kelter, an investigator for the Illinois Attorney General's office, testified that he went to MWS with Carey on October 27, 1982, and waited outside when Carey entered MWS at about 10:30 a.m. Around 4:30 p.m. he went back to MWS with other individuals and served a search warrant. He identified various pictures taken on the premises.

Laureen Morrison, a law clerk in the Attorney General's office, testified that she examined eight boxes of documents seized at MWS.

The defendant did not testify or present any evidence.

On appeal, defendant urges that the trial court erred in denying his motion to dismiss the indictment. Defendant styles his first contention under this argument as challenging the definition of look-alike substances in the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1102(z)), on the grounds that it is unconstitutionally vague in violation of the fourteenth amendment and article I, section 2, of the Illinois Constitution. However, defendant also challenges as unconstitutionally vague section 404 of the Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1404). Among other things, this section prohibits the knowing distribution of a look-alike substance.

■■ We find that defendant's challenge fails because he was charged for conduct "clearly prohibited" by the statute. (*People v. Greene* (1983), 96 Ill. 2d 334, 339, 450 N.E.2d 329, 331, citing *Parker v. Levy* (1974), 417 U.S. 733, 41 L. Ed. 2d 439, 94 S. Ct. 2547.) In the instant case, defendant was charged with knowingly distributing a look-alike substance. Since knowledge of the law is presumed (*Reed v. Albanese* (1966), 78 Ill. App. 2d 53, 59, 223 N.E.2d 419, 423), the defendant cannot complain he was without notice of the law. After a trial on the merits, the jury found the defendant knowingly distributed capsules that looked like amphetamines. Since this unlawful con-

duct falls within the statute's proscription, defendant has no standing to challenge the statute on the grounds of vagueness.

The defendant denies that his conduct was clearly prohibited, and contends that his challenge has merit because he merely sold Carey a bottle of capsules identified as decongestants containing caffeine and phenylpropanolamine. Defendant refers us to the case of *People v. Matkovick*, citing it for the proposition that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *People v. Matkovick* (1984), 101 Ill. 2d 268, 276, 461 N.E.2d 964, 968, quoting *United States v. Mazurie* (1975), 419 U.S. 544, 550, 42 L. Ed. 2d 706, 713, 95 S. Ct. 710, 714.

The defendant in *Matkovick* was charged with the unlawful distribution of a look-alike substance under section 404(b) of the Illinois Controlled Substances Act after allegedly selling to an investigator a substance he represented as amphetamines. The trial court allowed defendant's motion to dismiss the charge on the grounds that section 404(b) of the Act was unconstitutional. On appeal, our supreme court followed the analysis applied in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 71 L. Ed. 2d 362, 102 S. Ct. 1186, and rejected defendant's claim that section 404(b) was impermissibly vague. Under the *Hoffman Estates* analysis, a court must decide whether an enactment reaches a substantial amount of constitutionally protected conduct. (455 U.S. 489, 497, 71 L. Ed. 2d 362, 371, 102 S. Ct. 1186, 1193.) If the statute in question does not reach such protected conduct, the person bringing a vagueness challenge must show that the law is impermissibly vague in all of its applications. 455 U.S. 489, 497, 71 L. Ed. 2d 362, 371, 102 S. Ct. 1186, 1193.

■ ■ Applying this analysis to the instant case, the distribution of look-alike drugs is not constitutionally protected conduct. Neither are sections 404(b) or 102(z) of the Act impermissibly vague in all of their applications. A statute may be found unconstitutionally vague when its terms are so indefinite that "persons of common intelligence must guess at its meaning." (*Fagiano v. Police Board* (1983), 98 Ill. 2d 277, 282, quoting *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 299-300, *appeal dismissed* (1980), 444 U.S. 1062, 62 L. Ed. 2d 744, 100 S. Ct. 1001.) Section 102(z) clearly states that a look-alike substance means a noncontrolled substance resembling a controlled substance. It is both detailed and definite, so that a typical reasonable person considering it would have sufficient guidance to comply with the statute.

Defendant argues the statute is vague since the jury convicted him merely by finding the capsule defendant sold to Carey was similar in color and shape to an exhibit of an amphetamine capsule. This contention is without merit because the legislature clearly intended to prohibit distribution both of substances which actually match controlled substances and of substances leading "a reasonable person to believe that the substance is a controlled substance." Ill. Rev. Stat. 1983, ch. 56½, par. 1102(z).

■ Further, the statute's scienter requirement limits the reach of section 404(b) to those who intend to pass off a noncontrolled substance as a controlled substance. To succeed in this deceit, such individuals necessarily must determine whether the noncontrolled substance. looks like the controlled one. Therefore, the statute is not vague to those such as defendant who knowingly distribute look-alike substances.

■ Defendant chronicles possible combinations of colors and shapes of various controlled substances and contends that physical resemblance to a controlled substance should not be the basis for a conviction. We note that defendant's suggested cure for the alleged vagueness he challenges would require the statute to delineate the physical appearance of every controlled substance which a noncontrolled substance should not resemble. We reject this laundry-list approach since it ignores a basic tenet of the vagueness doctrine that due process principles do not require "impossible standards of clarity." *Kolender v. Lawson* (1983), 461 U.S. 352, 361, 75 L. Ed. 2d 903, 911, 103 S. Ct. 1855, 1860; *People v. Caffrey* (1983), 97 Ill. 2d 526, 530, 455 N.E.2d 60, 62.

Defendant claims the trial court erred in denying his motion to dismiss the indictment also because the penalties provided in section 404(b) of the Act are unconstitutionally disproportionate. Under section 404(b), a person who distributes a look-alike substance is guilty of a Class 3 felony and can be fined up to $150,000. Under section 401(f), a person convicted of distributing a controlled or counterfeit substance, depending on the amount, is guilty of a Class 3 felony and can be fined no more than $100,000 if the offense involves a Schedule IV substance. Section 401(g) similarly provides that an offense involving a Schedule V controlled or counterfeit substance is a Class 3 felony and a person can be fined no more than $75,000.

■ Our supreme court has held that the Controlled Substances Act is a proper exercise of the State's police power. (*People v. Matkovick* (1984), 101 Ill. 2d 268, 461 N.E.2d 964.) However, the court did not reach the constitutionality of the Act's penalty provi-

sions because defendant in that case had not been subjected to any punishment. (101 Ill. 2d 268, 277.) After examining the legislative history of the present act, we are persuaded that the penalty provisions are reasonably designed to remedy evils which the legislature has determined threaten the public's health, safety, and general welfare. (*People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029.) Thus, this exercise of the State's police power meets the requirements of due process of law.

The precursors of the present statute have been reviewed frequently by our supreme court. An earlier version of the Act which established a more severe penalty for possession of certain controlled substances than was established for delivery of those same substances was found to violate the due process clause of the Illinois Constitution in *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029. *Bradley* held that the disparate penalty provisions did not reflect the legislature's intent to punish drug trafficking more severely than mere possession. In *People v. Wagner* (1982), 89 Ill. 2d 308, 433 N.E.2d 267, the court following the reasoning in *Bradley* and found unconstitutional an earlier version of the Act which punished delivery of a purported controlled substance, a Class 3 felony, more severely than delivery of a Schedule IV or V controlled substance, a Class 4 felony. Ill. Rev. Stat. 1977, ch. 56½, pars. 1404, 1401(e), 1401(f).

In 1979, the legislature amended the Act by increasing the penalty for delivery of a Schedule IV or V controlled substance to a Class 3 felony. Yet it retained the respective fines of $10,000 and $5,000 for delivery of Schedule IV or V substances, while a person convicted of delivery of a purported controlled substance could have been fined up to $15,000. In *People v. Manuel* (1983), 94 Ill. 2d 242, 446 N.E.2d 240, the court found the amendment to raise the felony class for delivery of a Schedule IV or V controlled substance did not act to revive section 404 which provided sentencing for delivery of purported controlled substances. The *Manuel* court stated that review of an amended section 404 could be appropriate. 94 Ill. 2d 242, 245, 446 N.E.2d 240, 241.

Before *Manuel* was decided, the legislature had indeed amended section 404 of the Illinois Controlled Substances Act to include the look-alike substances definition and sentencing provisions. (Pub. Act 82–968, eff. Sept. 7, 1982.) This is the Act under which defendant in the instant case was convicted. Statements by the House and Senate sponsors of the proposed amendments clearly reflect that the legislature recognized special dangers connected with look-alike substances. (House Debates, H.B. 2079, May 18, 1982, at 123-24;

House Debates, H.B. 2079, May 20, 1982 at 156-63; Senate Debates, H.B. 2079, June 24, 1982, at 51-52.) Co-sponsors of the bill provided a preamble to the Act expressing the legislature's intent to create a penalty provision distinct from that applicable to controlled substances, based upon the different type of harm stemming from distribution of look-alike drugs. This preamble was designed to address the concerns of the supreme court in *Wagner,* and it states that the harm from look-alike substance offenses "is in fact greater than that of many actual controlled substances." (1982 Ill. Laws 2368, Preamble to Pub. Act 82—968.) When the words of a statute are plain and the legislative purpose manifest, the purpose must be given effect. (*Totten v. State Board of Elections* (1980), 79 Ill. 2d 288, 403 N.E.2d 225.) Therefore, we reject defendant's claim that section 404(b) penalties are unconstitutionally disproportionate.

■ Defendant next contends that the evidence was insufficient to sustain a guilty verdict. He asserts that the State failed to prove that: (1) the capsules distributed were not controlled substances; (2) defendant knowingly distributed a look-alike substance, and (3) a reasonable person would be led to believe that the substance distributed by the defendant was a controlled substance. Because we conclude on other grounds that the judgment must be reversed and the cause remanded for a new trial, it is inappropriate for us to analyze the evidence in greater detail than necessary to resolve the issues we deem dispositive. See *People v. Gordon* (1984), 128 Ill. App. 3d 92, 470 N.E.2d 29.

The appellate court, however, has a duty to address a defendant's sufficiency of evidence question to avoid placing defendant in double jeopardy upon a retrial. (*People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375.) Our review of all of the evidence introduced at trial leads us to conclude that there was sufficient evidence to avoid the proscription against double jeopardy. Nevertheless, this conclusion in no way implies that we have made a finding as to defendant's guilt which would be binding on the circuit court on retrial. On retrial, defendant is entitled to the presumption of innocence. *People v. Thompson* (1979), 75 Ill. App. 3d 901, 906, 394 N.E.2d 422, 426.

In its instructions to the jury, the trial court stated:

"You are further instructed that evidence has been received that the defendant has been involved in an offense other than that charged in the indictment. This evidence has been received solely on the issue of the defendant's knowledge. This evidence may be considered by you only for the limited purpose for which it has been—for which it was received."

It is defendant's position that the evidence referred to was two boxes

of pills seized from defendant's business. He argues that the instruction was improper because it advised the jury that possession of the substances in the boxes was a criminal offense. In effect, it instructed the jury that the substances were look-alikes, a material element of fact which the State had to prove. Defendant also argues that the instruction was erroneous because there was no evidence that he was involved in any other offense.

We agree with defendant that the instruction was fatally defective. The evidence it referred to consisted of one box of pills similar in color and size to the capsules defendant was charged with selling, and one box of pills identical to the ones sold. The jury heard that investigators for the State had confiscated the boxes on the day of defendant's arrest. During closing argument, the State asserted that the two boxes showed the defendant knew what he was doing. Since the instruction referred to defendant's involvement in an offense, we think it likely the jury believed these pills were in fact look-alike substances. Because one box contained pills identical to the capsules at issue, in effect the instruction improperly assumed one of the elements of the crime charged. *People v. Murawski* (1946), 394 Ill. 236, 242, 68 N.E.2d 272, 274.

The State asserts that a trial court may properly give an instruction to the jury with respect to the limited use for which the other crimes evidence was admitted when the evidence of other crimes tends to establish defendant's knowledge, and when, during trial, the court admonishes jurors to consider the evidence only for that limited purpose. (*People v. Peebles* (1983), 114 Ill. App. 3d 684, 693, 449 N.E.2d 230, 236.) It is true that the court here instructed the jury that evidence regarding the substances which were confiscated from defendant's premises was entirely distinct from the capsules defendant sold Carey, and that defendant was on trial for the capsules he sold.

■■ But the problem with the wording of the instruction was aptly phrased by the State itself during the instruction conference:

"[T]he language deals with it being another offense, and, in fact, it was not presented as though it is another offense ***."

It appears that defendant's instruction that he was not on trial for any act or conduct not alleged in the indictment was accepted by the court to resolve the problem. However, where an erroneous instruction is given, the giving of a correct instruction on behalf of defendant will not cure the error. (*People v. Chronister* (1942), 379 Ill. 617, 621, 41 N.E.2d 750, 752.) This is because it cannot be determined whether the jury followed the correct or the erroneous instruction.

(*People v. Voda* (1979), 70 Ill. App. 3d 430, 438, 388 N.E.2d 206, 213.)
Further, jury instructions should not be misleading or confusing, but
should fully and fairly inform the jury of the applicable law. *People v.
Gathings* (1981), 99 Ill. App. 3d 1135, 1138, 425 N.E.2d 1313, 1316,
*appeal after remand* (1984), 128 Ill. App. 3d 475, 470 N.E.2d 1260.

▮▮ Moreover, we find the admission of the two boxes of pills
was itself erroneous. Although the evidence came in on the issue that
defendant knew he was distributing look-alike substances, the jury
was not permitted to examine these pills or to hear testimony about
them and could only have speculated that the pills were look-alikes.
We cannot conclude that this error was harmless. The evidence had
little, if any, probative value as to defendant's knowledge. Combined
with the improper other offense instruction, it had substantial prejudi-
cial impact on the jury. (See *People v. Funches* (1978), 59 Ill. App. 3d
71, 73-74, 375 N.E.2d 135, 137.) The cumulative effect was to create
the impression that the defendant was guilty of the charged offense
because he had committed a crime by possessing the two boxes of
pills. (See *People v. Mitchell* (1984), 129 Ill. App. 3d 189, 200, 472
N.E.2d 114, 122.) Therefore, we have determined that this cause must
be reversed and remanded to the circuit court.

Defendant argues several additional errors were committed at
trial. Although this cause must be reversed and remanded for a new
trial on other grounds, we choose to discuss those questions raised by
defendant which may arise again on retrial. First, he contends that
the trial court erred in admitting two books, *Basic Drug Manufactur-
ing* and *Drug Manufacturing for Fun and Profit,* seized in a search
of defendant's premises. Defendant argues that this literature relating
to drug manufacture was irrelevant to the offense of distributing
look-alike substances and extremely prejudicial. The State counters
that this evidence allowed the jury to conclude that defendant perused
the books and acquired knowledge of what controlled substances look
like.

We agree with defendant that the books were irrelevant to the of-
fense of distributing look-alike substances. While offered and admitted
for the limited purpose of showing defendant's knowledge of what
controlled substances looked like, there is no evidence in the record
that the books contained information regarding amphetamines. The
jury was not permitted to have the books during their deliberations,
so it cannot be said that they could infer defendant's knowledge from
the fact that the books were found on his business premises on the
day of his arrest.

We disagree, however, that the error of admission inflamed the

jury or extremely prejudiced defendant. The evidence was introduced by exhibit-identification number during direct examination of a law clerk who had reviewed the evidence seized. She identified one book only as a booklet found in a box. The books were admitted into evidence without reference to their titles. The State referred to the titles during closing argument, but commented on the books only momentarily, connecting them to defendant's knowledge. Defense counsel emphasized the evidence was irrelevant to the charge of distribution and introduced only to influence the jury as to defendant's bad character.

Under these circumstances, we believe the erroneous admission of the evidence was harmless. (See *People v. Falkner* (1985), 131 Ill. App. 3d 706, 475 N.E.2d 964.) The evidence was not the type to have aroused or inflamed the jury. (*People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200.) Even if the book titles are considered significant evidence, it is harmless where other key evidence here, the similarity of the capsules to amphetamine, would have been sufficient to support the verdict. (*People v. Faysom* (1985), 131 Ill. App. 3d 517, 527, 475 N.E.2d 945, 953.) Reviewing courts must look to the entire record to determine whether the evidence, reasonably affected the jury's finding and should not disturb the judgment where other evidence was sufficient to support it. 131 Ill. App. 3d 517, 527.

Defendant also argues the State's expert witness should not have been permitted to testify about the effects of caffeine and phenylpropanolamine on the body. We are not persuaded. Expert testimony is admissible on matters requiring scientific knowledge. (*People v. Schyman* (1940), 374 Ill. 292, 295, 29 N.E.2d 270, 272.) The toxicologist's testimony regarding the effect and ingredients of the capsules defendant sold Carey was relevant because defendant had advertised the capsules as body stimulants, but stressed at trial that the capsules' label indicated they were merely decongestants.

Defendant's assertion that the trial court erred in permitting Carey to answer the question of why he was going to defendant's premises is likewise without merit. The complained of testimony consisted of that one question and Carey's brief answer, "To purchase look-alike drugs." The trial judge admonished the jury to disregard the word drugs. This court reviewed a related situation in *People v. Bradley* (1971), 3 Ill. App. 3d 101, 278 N.E.2d 243. There defendant was charged with the unlawful possession of heroin. The prosecutor asked the arresting officer what his assignment was on the day in question and he responded he was patrolling in areas where narcotic

44

addicts and peddlers were known to frequent. The response was held proper. Similarly, a defendant charged with selling a nonnarcotic represented to be a narcotic complained of the court telling jurors "this is a narcotics suit." (*People v. Calcaterra* (1965), 33 Ill. 2d 541, 547, 213 N.E.2d 270, 273.) The remark was upheld as substantiated by the indictment upon which defendant was tried.

Finally, defendant contends that the admission of an enlarged photograph of an amphetamine capsule, the capsule itself and the expert witness' testimony relating to the capsule was reversible error. However, we agree with the State that the jury was entitled to compare the amphetamine to defendant's capsule to determine whether a reasonable person would have thought they were look-alikes. The evidence was relevant and the trial court did not abuse its discretion in admitting the evidence and testimony. See *People v. Jones* (1983), 114 Ill. App. 3d 576, 590, 449 N.E.2d 547, 558.

For the foregoing reasons, the judgment of conviction of the circuit court of Cook County is reversed and this cause is remanded for a new trial in accordance with the views expressed herein.

Reversed and remanded.

HARTMAN and BILANDIC, JJ., concur.