**UNITED STATES of America,
Appellee,**

v.

**Eduardo BERMUDEZ et al.,
Appellants.**

**Nos. 43, 44, 542, Dockets 75–1073,
75–1122, 75–1379.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 2, 1975.

Decided Nov. 6, 1975.

Charles Sutton, New York City, for appellant Bermudez.

Arnold E. Wallach, New York City, for appellant Diaz-Martinez.

Thomas R. Mattarazzo, Brooklyn, N.Y., for appellant Vivas.

Steven Kimelman, Asst. U.S. Atty. (David G. Trager, U.S. Atty., E. D. N. Y., on the brief), for appellee.

Before WATERMAN, OAKES and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

This appeal in a rather commonplace drug case raises several questions worthy of consideration.

Appellants Eduardo Bermudez, Jorge Vivas and Israel Diaz-Martinez were convicted by a jury on February 7, 1975, of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. They were each sentenced by Chief Judge Mishler of the Eastern District of New York to a five-year term of imprisonment and to special parole for ten years.

The Government evidence was that in October, 1973, Diaz-Martinez, owner of a

clothing store at 293 Grand Street in Brooklyn, New York, had informed his employees, codefendants Manuel Fiffe and Luis Miranda, that they were going to sell cocaine at the clothing store. The cocaine was prepared and stored at the home of a third employee, Juanita Guzman.

On November 5, 1973, Fiffe obtained one ounce of cocaine from Diaz-Martinez and took it to the apartment of another codefendant, Victor Blanco. At Blanco's apartment, Fiffe sold the cocaine for $675 to an undercover special agent of the Drug Enforcement Administration (DEA). Fiffe then returned to the Grand Street clothing store and gave this money to Diaz-Martinez. Three days later, pursuant to a telephone call from Blanco that "the people at the factory had a new shipment of uniforms," the same DEA agent went to the clothing store where Fiffe and Blanco gave him a sample of cocaine they had obtained from Diaz-Martinez. The agent agreed at that time to purchase a one-eighth kilo of this cocaine for $2,900. This sale was consummated on November 12, 1973, in the basement at 293 Grand Street, and the proceeds were again delivered to Diaz-Martinez.

On November 20, 1973, after being told that "the people in the factory had new uniforms" the DEA agent met with Blanco and informed him that he was interested in purchasing a half kilo of cocaine if the quality was right. Blanco relayed this message to Fiffe who informed Diaz-Martinez, but the proposed order was too large for Diaz-Martinez to fill at that time, and he referred Fiffe to appellant Bermudez, a regular customer of the clothing store, who Fiffe had previously observed snorting cocaine with Diaz-Martinez. Bermudez met with Fiffe and Blanco at Blanco's apartment that evening to discuss the sale. Subsequently Bermudez took Fiffe to appellant Vivas' record store in Brooklyn.

The next day, Blanco called the special agent and told him that the half kilo of cocaine was now available for sale. The agent met Blanco and Fiffe at Blanco's apartment and was taken to Vivas' record store where appellants Bermudez and Vivas were waiting for him in a back room. Vivas subsequently produced the half kilo of cocaine, but the transaction was not completed because the agent had not brought the $12,000 necessary to purchase the entire amount or even the $6,500 necessary to buy "a quarter," and Vivas refused to sell less than an eighth kilo.

On November 29, 1973, the special agent met with Blanco and Juanita Guzman in Blanco's apartment. She informed the agent that if he wanted to continue to deal in "quarters"—quarter kilos—he could obtain them at Diaz-Martinez's clothing store.

A warrant was obtained authorizing a search of the clothing store, which was conducted on March 27, 1974. The search turned up narcotics paraphernalia but no drugs. On June 14, 1974, a search pursuant to a warrant was made of appellant Vivas' house. This search discovered traces of cocaine, bags of lactose and a scale.

The indictment was returned on May 30, 1974, charging appellants Diaz-Martinez, Bermudez and Vivas along with Fiffe, Blanco and Miranda of conspiracy to distribute cocaine. After arraignment, Fiffe, Blanco and Miranda agreed to plead guilty and testify at trial. At the trial, the principal witnesses for the prosecution were Fiffe and the undercover DEA agent.

The appellants urge several grounds for reversal of their convictions on this appeal. They claim that (1) the indictment was insufficient because it failed to charge an overt act as part of the conspiracy; (2) cross-examination of Bermudez's character witnesses at trial as to whether they "had heard" of prior narcotics offenses by Bermudez was improper; (3) introduction of evidence of narcotics paraphernalia and narcotics traces found in the home of Vivas six weeks after the termination of the conspiracy was improper; (4) introduction of narcotics paraphernalia seized at the cloth-

ing store for the purpose of impeaching Diaz-Martinez's credibility was improper after that evidence had been suppressed on the direct case due to nonspecificity of the warrant; (5) the district court erred in accepting the qualifications of the special agent as an expert able to identify cocaine; (6) the district court's charge to the jury on the weight to be given to the testimony of an accomplice was in error; (7) the midtrial instructions on what constitutes a conspiracy were unfair; (8) the trial court coerced a verdict and cut short the jury deliberations; (9) the trial court erred in refusing Diaz-Martinez's motion for a new trial on the basis of newly discovered evidence. We hold against appellants on all claims of error and affirm each of the convictions.

I. *Sufficiency of the Indictment.* Appellants Bermudez and Vivas contend that an indictment for conspiracy under 21 U.S.C. § 846 must allege an overt act. Although in the ordinary case of a conspiracy under 18 U.S.C. § 371 it has been held that at least one overt act must be set forth in the indictment, *United States v. Offutt,* 75 U.S.App.D.C. 344, 127 F.2d 336, 338 (1942) (then 18 U.S.C. § 88),[1] "there is authority to the effect that proof of an overt act is not a necessary element of a conspiracy charged under 21 U.S.C. § 846." *United States v. Tramunti,* 513 F.2d 1087, 1113 n. 28 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975), *citing, e. g., Ewing v. United States,* 386 F.2d 10 (9th Cir. 1967), *cert. denied,* 390 U.S. 991, 88 S.Ct. 1192, 19 L.Ed.2d 1299 (1968); *United States v. DeViteri,* 350 F.Supp. 550, 552 (E.D.N.Y.1972). In a case involving an offense under 21 U.S.C. § 846, the conspiracy to distribute narcotics is in and of itself a specific crime. Since an indictment is sufficient if it charges the offense in the words of the statute, *Grene v. United States,* 360 F.2d 585, 586 (5th Cir.), *cert. denied,* 385 U.S. 978, 87 S.Ct. 522, 17 L.Ed.2d 440 (1966), an indictment under 21 U.S.C. § 846 is sufficient if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege any specific overt act in furtherance of the conspiracy. *See United States v. Murray,* 492 F.2d 178, 192 (9th Cir. 1973), *cert. denied,* 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d 87 (1974); *cf. Singer v. United States,* 323 U.S. 338, 65 S.Ct. 282, 89 L.Ed. 285 (1945) (Douglas, *J.*) (no overt act requirement for conspiracy offense under draft evasion statute); *Nash v. United States,* 229 U.S. 373, 378, 33 S.Ct. 780, 57 L.Ed. 1232 (1913) (Holmes, *J.*) (same re Sherman Act). Thus, the "overt act" requirement for general conspiracy charges under 18 U.S.C. § 371 does not apply where a particular type of conspiracy has, as in the case of 21 U.S.C. § 846, been made a specific, substantive offense, *i. e.,* is permissible "on the common law footing." *Nash v. United States, supra,* 229 U.S. at 378, 33 S.Ct. 780. Under the standard which applies to the indictment in this case, appellant's claim of insufficiency therefore must be rejected.

1. The statutory requirement of 18 U.S.C. § 371 that "one or more of [the conspirators] do any act to effect the object of the conspiracy" is what distinguishes the general statutory crime of conspiracy from common law conspiracy. *See United States v. Rabinowich,* 238 U.S. 78, 86, 35 S.Ct. 682, 684, 59 L.Ed. 1211 (1915) (act need not be criminal, much less constitute "the very crime that is the object of the conspiracy"). The drug conspiracy statute, 21 U.S.C. § 846, reads simply: "Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The indictment here referred to a conspiracy between October 31, 1973, and May 1, 1974, to violate Section 841(a)(1) of Title 21 and said "It was a part of said conspiracy that the defendants and co-conspirators would knowingly and intentionally distribute and possess with intent to distribute cocaine hydrochloride, a Schedule II narcotic drug controlled substance." Counts 2, 3, 4 and 5 charged substantive offenses against Blanco, Fiffe and Miranda. Count 6 charged Bermudez and Vivas with the substantive offense of possessing with intent to distribute one-half kilogram of cocaine, on or about November 20, 1973.

II. *Cross-Examination of Character Witnesses.* At the trial appellant Bermudez presented two character witnesses who vouched for his reputation in the community as a law-abiding citizen. Before cross-examining these witnesses, the prosecutor informed the court that he intended to ask the witnesses whether they "had heard" that the defendant Bermudez had been arrested in 1974 on a marijuana charge. The prosecutor supplied documentary proof of the arrest to the court, and Chief Judge Mishler ruled that the questions would be allowed.

Where a witness is testifying as to the good reputation of the defendant in the community, the prosecutor may inquire as to the witness's knowledge of prior offenses of the defendant since such knowledge bears on the credibility of reliability of the witness's assertion. *See Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948);[2] *United States v. Silverman,* 430 F.2d 106, 125–26 (2d Cir.), *cert. denied,* 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1970); 3A J. Wigmore, Evidence § 988 (Chadbourn ed. 1970). It was proper for the trial court to allow the question whether the witness "had heard" of the disparaging rumor "as negativing the reputation." *Id.* The prosecutor did not here commit the error of probing for the truth of the fact of prior misconduct, a quest which would violate the rule against the use of evidence of prior crimes to prove the bad character of the defendant. *See* Fed.R.Evid. 404(b); *United States v. Torres,* 519 F.2d 723 (2d Cir. 1975).

III. *Admission of Post-Conspiracy Evidence Seized at Vivas Home.* The trial court admitted evidence of "traces of narcotics" and narcotics-related equipment (lactose, scales and other implements) which had been seized in a search of the Vivas home conducted with a warrant. This search was made six weeks after the conspiracy alleged in the indictment had terminated. Appellants claim that it was reversible error for this evidence to have been introduced at trial. They argue strenuously that the evidence is too prejudicial to be admitted in view of its only slight probative impact.[3] *See United States v. Papadakis,* 510 F.2d 287, 294–95 (2d Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975).

Evidence obtained by searches conducted after the termination of a conspiracy has frequently been held admissible to prove the existence of the conspiracy even though occurring after its conclusion. For example, in *Lutwak v. United States,* 344 U.S. 604, 617, 73 S.Ct. 481, 97 L.Ed. 593 (1953), in a case involving a conspiracy to enter into false marriages for the purpose of circumventing immigration restrictions, the Supreme Court held admissible evidence of post-conspiracy *conduct* which showed the false character of the marriages and the

2. The Court said that the form of the inquiry here, "Have you heard?," has general approval while "Do you know?" has not. *Michelson v. United States,* 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

3. In *United States v. Torres,* 519 F.2d 723 (2d Cir. 1975), we stated the criteria to be applied to determine the admissibility of "other crimes" committed by a defendant at his trial for a separate offense. There we held that "other crimes evidence is admissible on the government's case in chief unless introduced *solely* to show the defendant's criminal character, provided that its probative worth outweighs its potential prejudice." *Id.* at 727. Since the evidence seized at the Vivas home is not plainly "evidence of other crimes" (possession of lactose and a set of scales, and the presence of "traces of cocaine" in one's apartment not rising, by themselves, to the level of a federal crime), it is not clear that the *Torres* case controls here. Even assuming that it does, since the evidence seized at Vivas' home was used to show his prior participation in the conspiracy to distribute narcotics, and not his bad character, the "other crimes" test in *Torres* reduces to the "balance of prejudice and probative value" test applied by *Anderson v. United States,* 417 U.S. 211, 221–22, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974), and *United States v. Tramunti,* 513 F.2d 1087, 1116 (2d Cir. 1975), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

fraudulent intent of the parties in entering upon them. *Compare Anderson v. United States,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974) (post-conspiracy declarations admissible where not offered to prove truth of declaration and hence not hearsay), *with United States v. Krulewitch,* 336 U.S. 440, 443, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (declarations of one conspirator after conspiracy has ended inadmissible). The rule these cases have articulated is that "acts of one alleged conspirator could be admitted into evidence against the other conspirator, if relevant to prove the existence of the conspiracy, 'even though they might have occurred after the conspiracy ended.'" *Anderson v. United States, supra,* 417 U.S. at 219, 94 S.Ct. 2260; *quoting Lutwak v. United States, supra,* 344 U.S. at 618, 73 S.Ct. 481.[4]

This reasoning has been applied in both *United States v. Tramunti, supra,* 513 F.2d at 1116, and *United States v. Bennett,* 409 F.2d 888, 895–96 (2d Cir.), *cert. denied,* 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969), to find that narcotics seized after the termination of a conspiracy are admissible to prove the prior existence of the conspiracy. In *Bennett* the court allowed into evidence the fruits of a post-conspiracy search which had uncovered "the instrumentalities used in a ramified narcotics conspiracy . . . ." 409 F.2d at 895. The underlying justification for these cases appears to be that such evidence tends to show the intent or state of mind of the appellant to enter upon the conspiracy to distribute narcotics. *See, e. g., United States v. Mallah,* 503 F.2d 971, 981 (2d Cir. 1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975) (post-conspiracy possession of eight thermometers evidence of intent to participate in prior narcotics conspiracy); *United States v. Cohen,* 489 F.2d 945, 948–49 (2d Cir. 1973) (post-conspiracy participation by defendant in firearms training activities at Jewish Defense League camp admissible to show state of mind to enter conspiracy to falsify federal firearm registration forms).

The possession by appellant Vivas of "instrumentalities used in a ramified narcotics conspiracy" is more than only slightly probative. It tends to show that Vivas had an intent and a state of mind to enter upon a narcotics distribution scheme. It also tends to corroborate the testimony of Fiffe and the special agent that Vivas was an active participant in the conspiracy involved in this case. We do not consider that any potential prejudice to appellant Vivas which may have stemmed from the introduction of this physical evidence outweighs the probative value of that material, as it did in *United States v. Falley,* 489 F.2d 33 (2d Cir. 1973). We reject appellant's claim of error.

IV. *Use of Excluded Evidence for the Purpose of Impeaching Diaz-Martinez's Credibility.* On March 27, 1974, the clothing store owned and operated by appellant Diaz-Martinez was searched pursuant to a warrant by agents of the Drug Enforcement Administration. Although no narcotics were found, a number of items used in the narcotics trade were seized. Upon appellant Diaz-Martinez's motion, the trial court suppressed these items on the ground that the description of the premises to be searched was unconstitutionally broad. The court found that the description "293 Clothing Corporation, 293 Grand Street" did not, with sufficient specificity, distinguish the clothing store and basement, where the search was actually conducted, from the two floors of apartments located above the clothing store. Since the warrant could have permitted a search of the entire building, and there was probable cause for search of the bottom floors only, the warrant was defective due to overbreadth and

4. Whatever prejudice there may have been as to appellant Vivas by the admission of this late-seized evidence was limited to him by the district court's instructions to the jury to the effect that the evidence was not to be considered as to the guilt or innocence of Bermudez and Diaz-Martinez.

the materials seized were properly suppressed. *See Steele v. United States,* 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925) (building to be searched may be identified by street and number); *United States v. Kaye,* 139 U.S.App.D.C. 214, 432 F.2d 647 (1970) (search of apartment above store described on warrant invalid); *United States v. Hinton,* 219 F.2d 324 (7th Cir. 1955) (in multiple occupancy structures the particular unit to be searched must be identified); *United States v. Brown,* 151 F.Supp. 441 (E.D. Va.1957) (same).[5]

The court nevertheless allowed use of this evidence for impeachment of the testimony of Diaz-Martinez who had taken the stand in his own behalf. The appellants do not object to its admissibility for this limited purpose. In *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the Supreme Court held that excluded evidence may become admissible for impeachment purposes where a defendant has "taken the stand and testified contrarily to the inculpatory information . . . ." *Id.*[6] The appellants' objection here is that the trial court, in its charge to the jury, erred in not telling the jury that they could not consider this evidence to determine whether Diaz-Martinez had committed the crime charged.

No such limiting instruction was given by Chief Judge Mishler, but none of the appellants made a request at trial that such a charge be given. In the absence of clear error by the trial court in its instructions, failure to make timely request for, or objection to, instructions to the jury waives all objections to the charge given. Fed.R.Crim.P. 30. Failure to give limiting instructions is generally held not to be plain error. *United States v. Bozza,* 365 F.2d 206, 214 (2d Cir. 1966) (failure to include charge limiting purpose for which the jury could consider evidence of crime not charged in the indictment not plain error). *See also United States v. Blount,* 479 F.2d 650, 651 (6th Cir. 1973); *United States v. Ballentine,* 410 F.2d 375 (2d Cir. 1969), *cert. denied,* 397 U.S. 928, 90 S.Ct. 935, 25 L.Ed.2d 107 (1970); *United States v. Cifarelli,* 401 F.2d 512, 514 (2d Cir. 1968), *cert. denied,* 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 448 (1969); C. Wright, Federal Criminal Practice and Procedure § 496, at 326 (1969).

V. *Qualifications of the Special Agent as an Expert Witness for Detection of Cocaine.* The special agent who participated in the drug transaction with appellants Bermudez and Vivas was permitted to testify at trial that, in his opinion, the glistening white, powdery substance offered for sale to him by Vivas on November 20, 1973, was cocaine. Appellants Bermudez and Vivas claim that the special agent was not qualified to make such a judgment and that permitting his testimony in this regard was reversible error.

While chemical analysis of the white powdery substance is doubtless the best basis for expert identification of cocaine, it is not the only basis. The agent testified that while at BNDD basic training school he had been specially trained to make visual identifications of different

5. The Government urges on this appeal that since there was a separate entrance to the top two floors of the clothing store building the multi-unit character of the building was not externally apparent and was not known to the officers who applied for the warrant. If this were, indeed, the situation, and there was no way they could have known of that character, then it is possible that the warrant would fall within the exception provided by *United States v. Santore,* 290 F.2d 51, 66–67 (2d Cir. 1959), *aff'd in parts here relevant,* 290 F.2d 74 (2d Cir. 1960) (en banc), *cert. denied,* 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961), to the multi-unit specificity requirement. But in light of our determination that the evidence was properly used as impeachment of Diaz-Martinez at trial, we need not reach this rather troublesome issue.

6. There is lacking on this record the type of abusive police conduct which might prohibit use of excluded evidence even for purposes of impeachment. *See Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). Rather, here the error was a technical omission in the warrant description, *see* note 5 *supra.*

drugs, including cocaine, and that during his four years of experience as an agent for the Drug Enforcement Administration he had on nearly 35 occasions identified cocaine solely upon observation, and that most of these identifications had been confirmed by laboratory tests and at least five also by the local anesthetic effect produced from rubbing a small part of the body. The agent also gave a detailed explanation of how cocaine may be visually identified especially where as here it contains "rocks," *i. e.*, small lumps of compressed cocaine.[7] And his visual observations of the cocaine actually purchased on November 5 and November 12 had been confirmed by laboratory tests.

A district court judge has quite wide discretion in determining the qualifications and competency of a witness to express an opinion as an expert. His decision should not be disturbed unless there is a clear showing of abuse of discretion. *Tropea v. Shell Oil Co.*, 307 F.2d 757, 763 (2d Cir. 1962); Fed.R.Evid. 702 (Advisory Committee Note). *See also Cross v. Estate of Patch*, 123 Vt. 11, 178 A.2d 393 (1961). On the facts before the district court there was plainly a sufficient practical basis for the special agent's testimony to be admitted. *See* 7 J. Wigmore, Evidence § 1923 (3d ed.). *See also United States v. Atkins*, 473 F.2d 308, 313 and cases cited (8th Cir.), *cert. denied*, 412 U.S. 931, 93 S.Ct. 2751, 37 L.Ed.2d 160 (1973) (addict permitted to express opinion on whether substance heroin). The trial court properly charged the jury that the agent's testimony was not binding upon them and that they were the ultimate judge of its worth. Accordingly, the appellants' claim of error in this regard must be rejected.[8]

VI. *Mid-Trial Instructions on Conspiracy.* The Government offered the testimony of the special agent regarding the acts and declarations of appellant Bermudez. When defense counsel objected to the admissibility of this evidence as against the other defendants, it became necessary for the court to explain to the jury the circumstances under which the testimony was to be tentatively received. *See United States v. Cohen, supra*, 489 F.2d at 950. Accordingly, Chief Judge Mishler instructed the jury as to the elements of a conspiracy, and as to the admissibility of the acts of one coconspirator as against all other coconspirators. Defense counsel objected to the instructions as given, and the trial court decided to repeat the instructions word for word as they appear in 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions §§ 23.09, 29.-05–.06 (2d ed. 1970). Appellants urge that the initial instructions were so prejudicial as to require a new trial; they do not attack the validity of the second instructions as given.

In the first instructions Chief Judge Mishler instructed the jury that only if they found the existence of a conspiracy could they charge each defendant with the acts of their coconspirators. This charge was proper under *United States v. Jacobs*, 431 F.2d 754, 761 (2d Cir. 1970), *cert. denied*, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971). He further charged that one coconspirator is liable for the acts of another in furtherance of the conspiracy even if he has no knowledge of the act or opposes it. While this instruction may also be appropriate, *see Pinkerton v. United States*, 328 U.S. 640, 646–47, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the analogy chosen by the trial court to illustrate the proposition was, perhaps, inapt. The metaphor used was that of two grocers who were partners who would both be liable for an order of 500 cases of canned corn made by either

7. The agent testified that he used a spoon to sift through one of the two November 20 bags constituting the one-half kilo offered and found a large unbreakable "rock" and that the powder numbed his thumb and index finger when rubbed between them.

8. The appellants' claim that testimony by a chemist that cocaine cannot be identified by observation made the latter's evidence inadmissible is lacking in merit since it goes only to weight, not admissibility.

partner, even if the other knew nothing about it or even opposed the order. This reference to partnership law may be slightly misleading in the conspiracy context of this case. However, viewing the instructions as a whole, *see, e. g., United States v. Cisnecos*, 491 F.2d 1068 (5th Cir. 1974); *United States v. Thurman*, 135 U.S.App.D.C. 184, 417 F.2d 752 (1969), *cert. denied*, 397 U.S. 1026, 90 S.Ct. 1269, 25 L.Ed.2d 535 (1970), and considering that a second set of instructions was given at the same time, the validity of which was not challenged, we find no prejudice to the defendants stemming from the mid-trial charges.

VII. *District Court Charge on the Weight to be Given to an Accomplice's Testimony.* The trial court properly instructed the jury that the testimony of the accomplice, Fiffe, need not be corroborated to be credited. *Caminetti v. United States*, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *United States v. Carrique*, 316 F.2d 186, 187 (2d Cir. 1963) (per curiam). The court warned that

> the jury should keep in mind that such testimony is always to be received with caution and weighed with great care. [The accomplices'] testimony is not to be considered by you as you might consider any ordinary layman's testimony. You must recognize that they say they participated in the crime charged.

The appellants object to this charge which, although sanctioned by *United States v. Corallo*, 413 F.2d 1306, 1322–23 (2d Cir.), *cert. denied*, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 422 (1969), and *United States v. Famulari*, 447 F.2d 1377, 1382 (2d Cir. 1971), did not include the specific language found in *United States v. Padgent*, 432 F.2d 701, 704 (2d Cir. 1970), which warns that "[a]n accomplice so testifying may believe that the defendant's acquittal will vitiate expected rewards that may have been either explicitly or implicitly promised him in return for the plea of guilty and his testimony."

But the *Padgent* language was in the context of permitting a wide latitude for cross-examination, not as suggested language for instructions. We are satisfied that the charge in this case fairly apprised the jury of the pitfalls of relying upon an accomplice's testimony, and we sustain it on that basis. *See United States v. Vita*, 294 F.2d 524, 526 (2d Cir. 1961), *cert. denied*, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788 (1962).

VIII. *Supplemental Charge and Jury Deliberations.* After a day of deliberations on the verdict, the jury informed the district court that it was unable to reach a decision and that it was deadlocked on the case. The jury was called to the courtroom and the judge gave a supplemental charge which said in part:

> The lawyers spent a lot of time in preparing and it was a long trial. If you fail to agree it just means that the lawyers will have to do the work all over again and there is no reason to suppose that any other jury is going to be of better quality and decide it differently than you.

The jury returned to the jury room where it deliberated for another full day before reaching its verdict. In light of the several cases in this court which sustain the use of such a charge, appellants' claim must be rejected. The statement of this court in *United States v. Hynes*, 424 F.2d 754, 757 (2d Cir.), *cert. denied*, 399 U.S. 933, 90 S.Ct. 2270, 26 L.Ed.2d 804 (1970), as to *Allen*-type charges is equally applicable here:

> The charge is no more than a re-statement of the precepts which the trial judge almost invariably gives to guide the jurors' deliberations in his original charge. Its function is to emphasize that a verdict is in the best interests of both prosecution and defense, and we adhere to the view that "[t]he considerable costs in money and time to both sides if a retrial is necessary certainly justify an instruction to the jury that if it is possible for them to reach a unanimous verdict without any

juror yielding a conscientious conviction . . . they should do so." *United States v. Rao*, 394 F.2d 354, 355 (2d Cir. 1968).

*See also United States v. Tyers*, 487 F.2d 828, 832 (2d Cir. 1973), *cert. denied*, 416 U.S. 971, 94 S.Ct. 1995, 40 L.Ed.2d 560 (1974); *United States v. Martinez*, 446 F.2d 118 (2d Cir.), *cert. denied*, 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 259 (1971). We can find nothing in the charge in this case which exceeds this permissible encouragement to the jurors to pursue their deliberations toward a verdict, if possible, in order to avoid the expense and delay of a new trial. The charge did not coerce a verdict, or direct the jury to reach any result; it merely requested the jurors to continue their deliberations, which they did for another full day before reaching their result. We reject this claim of error.

IX. *Rejected Motion for New Trial by Appellant Diaz-Martinez.* After the trial and verdict in this case, appellant Diaz-Martinex moved for a new trial pursuant to Fed.R.Crim.P. 33 on the grounds of newly discovered evidence. His claim is that only after the trial did he learn that state narcotics agents had cooperated with the federal agents in their investigation of the 293 Clothing Store activities, and the Government had failed to disclose state investigative files in this matter which, under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), he should have received. He claims these files would have assisted his cross-examination of the Government witness Fiffe.

Even assuming that something in the state files could have aided in the cross-examination, a contention which the Government vigorously disputes,[9] their nondisclosure is not grounds for granting a new trial for newly discovered evidence under our recent case of *United States v. Slutsky*, 514 F.2d 1222 (2d Cir. 1975). As we there again held, such a motion can succeed only where the evidence discovered after trial could not, with the exercise of due diligence, have been discovered earlier, and where the evidence is so material that it would be likely to have produced a different result had it been available at trial. *Id.* at 1225. Here appellant's counsel could, with due diligence, have discovered the existence of the alleged files. He was aware of pending state court proceedings against Fiffe, Miranda, Blanco and Juanita Guzman for dealing with state narcotics officers during the same period of the present conspiracy because he represented Guzman in that case. In view of that participation he was plainly in a position to subpoena whatever state files he now claims would have assisted preparation for cross-examination of Fiffe. But more importantly, we fully agree with Chief Judge Mishler's finding at the hearing on the motion for new trial that the additional material could not have materially benefited the appellant within the meaning of the *Slutsky* case. *See also United States ex rel. Regina v. LaVallee*, 504 F.2d 580, 584 (2d Cir. 1974), *cert. denied*, 420 U.S. 947, 95 S.Ct. 1330, 43 L.Ed.2d 425 (1975).

The trial judge's finding that Fiffe's testimony would not be shaken by the allegedly newly discovered evidence was based both on his *in camera* review of the state files at issue and upon his first-hand observation of the witness. Where

9. At the post-trial hearing on the motion for a new trial the Government produced both its own agent and the New York police detective who had participated in the State's investigation. They both testified that there was no joint federal-state investigation of any of the appellants, although there were partly simultaneous separate investigations going on at 293 Grand. The entire state file in the investigation was produced *in camera* for the trial court's inspection to verify that assertion. These witnesses and the Assistant United States Attorney also stated that this local police file was never in the possession of the prosecution or the federal investigators in this case. This uncontradicted evidence makes clear that there was no violation of the Jencks Act, 18 U.S.C. § 3500(b), which requires the United States to turn over to defendants the statements of a witness which are "in the possession of the United States."

newly discovered evidence is sought to place at issue the credibility of a prosecution witness we find it important to give deference to the conclusions of the trial judge whose presence at the proceedings gives him a far better vantage than our own for this determination. *See United States v. Zane*, 507 F.2d 346 (2d Cir. 1974), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1563, 43 L.Ed.2d 775 (1975). Accordingly, we affirm the denial of the motion for a new trial made by appellant Diaz-Martinez.

Appellants have raised further objections to the conduct of the trial and to the sufficiency of the evidence to support the convictions. We have considered these claims, but none of them raise any substantial matters meriting further discussion.

Judgments affirmed.