**UNITED STATES of America, Appellee,**

v.

**Osvaldo PATERNINA–VERGARA, Justino Reyes, Jerry Carter and Juan Ganen, Defendants-Appellants.**

**Nos. 330 to 333, Dockets 84–1185 to 84–1188.**

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1984.

Decided Nov. 30, 1984.

Certiorari Denied Feb. 19, 1985. See 105 S.Ct. 1197.

Richard A. Rehbock, New York City, for defendant-appellant Paternina-Vergara.

Nicholas J. Stroumtsos, Jr., New Brunswick, N.J. (Roger W. Daley, New Brunswick, N.J., on the brief), for defendant-appellant Reyes.

Frederick P. Hafetz, New York City (Lawrence S. Goldman, Jay K. Goldberg, Goldman & Hafetz, New York City, on the brief), for defendant-appellant Carter.

Patrick J. Baker, Buffalo, N.Y., for defendant-appellant Ganen.

Matthew J. Murphy III, Asst. U.S. Atty., Buffalo, N.Y. (Salvatore R. Martoche, U.S. Atty., Buffalo, N.Y., on the brief), for appellee.

Before NEWMAN, CARDAMONE and DAVIS,* Circuit Judges.

JON O. NEWMAN, Circuit Judge:

Osvaldo Paternina-Vergara, Justino Reyes, Jerry Carter, and Juan Ganen appeal from judgments entered in the District Court for the Western District of New York (John T. Curtin, *Chief Judge*) convicting them, after a jury trial, of cocaine distribution and conspiracy in violation of 21 U.S.C. §§ 841(a)(1), 846 (1982). Their principal claim on appeal is that the Jencks Act, 18 U.S.C. § 3500, required production of documents in the possession of foreign law enforcement officials. For the reasons that follow, we affirm.

## BACKGROUND

Appellants were the subjects of an undercover investigation begun by the Royal Canadian Mounted Police (RCMP) and later directed by the United States Drug Enforcement Agency (DEA). The operation began in February 1983 when Robert Stadel, a Canadian citizen who had engaged in various business deals with appellant Carter, approached the RCMP and suggested that he could provide information about the criminal activities of Carter's business associates, the Ganen family of Miami, Florida. The RCMP hired Stadel and pursued an investigation. RCMP Corporal Gerald Froud was assigned to pose as a Canadian citizen interested in purchasing cocaine for a nationwide distribution network.

Stadel and Froud held a series of meetings with appellants to arrange for the sale of the cocaine. Carter met with the agents in Toronto in March 1983 and discussed the sale of thirty to fifty kilograms of cocaine at a price of $46,000 per kilo. Carter and appellant Ganen met with the agents in West Palm Beach, Florida, on April 16, 1983, and discussed the possibility of increasing the quantity of cocaine to 100 kilos. At a second West Palm Beach meeting two days later, Carter and Ganen were accompanied by appellant Paternina-Vergara, who was described by Ganen as "my partner." Carter and Ganen met the agents again on April 19, 1983, at the Fort Lauderdale airport, where Carter handed Stadel a small business card case containing approximately one-half gram of cocaine.

Stadel and Froud remained in contact with Carter during the following weeks, while delivery of the cocaine was delayed. On April 25, the RCMP agents and an undercover DEA agent took Carter to a public storage area where they showed him the $4.6 million in cash with which they intended to purchase the cocaine. Carter informed Froud on May 5 that the initial shipment of 15 kilos would arrive on Saturday, May 7. DEA surveillance units took up positions near room 179 of the Executive Hotel in Cheektowaga, New York, on the afternoon of May 7. Sometime after 6:00 p.m. a white Plymouth Reliant arrived at the hotel. Appellant Reyes was the driver of the car, and Paternina-Vergara was a passenger. Ganen left room 179, met Reyes and Paternina-Vergara, and led them back to the hotel room.

At about 6:20 p.m., Froud, DEA Agent Kenneth Peterson, and Stadel went to room 179. Ganen assured them that everything was ready. Froud asked when the other thirty-five kilos would arrive; Paternina-Vergara replied, "Monday." Peterson asked whether it was all right to speak in front of Reyes, and Ganen replied that it was. Before leaving the room, Froud asked Reyes if the thirty-five was coming on Monday. Reyes nodded his head affirmatively. Paternina-Vergara, Ganen, Peterson, and Froud then left the room to examine the cocaine.

---

* The Honorable Oscar H. Davis of the United States Court of Appeals for the Federal Circuit, sitting by designation.

Outside, Paternina-Vergara opened the trunk of the Reliant, which contained two cardboard boxes. After opening the boxes and examining the cocaine, the group walked across the parking lot. Once out of sight of room 179, Paternina-Vergara and Ganen were arrested. They were advised of their rights by a DEA agent. Froud and Peterson returned to room 179, where they arrested Reyes and Carter. Both suspects were advised of their rights. All four of the appellants made post-arrest statements to the authorities.

## DISCUSSION

### I.

Appellants first contend that in the circumstances of this case the Jencks Act required the prosecutor to provide them with documents in the possession of Canadian law enforcement officials. Prior to trial, the Government made various investigative materials available to defense counsel. These materials included RCMP tape recordings of meetings and telephone calls between Froud, Stadel, and Carter and notebooks containing notes of meetings made by both Froud and Stadel. During the cross-examination of Froud, one of the defense counsel requested access to RCMP reports of interviews in which Froud had participated. The District Court directed Froud to request that his superiors permit access to the reports. The following day the Assistant United States Attorney (AUSA) trying the case advised the Court that he had been in contact with the RCMP and the Canadian Department of Justice. The Canadian authorities would permit the AUSA to review the documents, but only in Canada; they would permit disclosure of relevant documents only with the permission of RCMP Headquarters. The trial was adjourned pending the AUSA's review of the documents. The District Judge de-

clined an invitation to accompany the AUSA to Canada to review the documents.

The AUSA reviewed every document in the RCMP's investigative file. He photocopied, copied verbatim, or summarized all reports of contacts between Stadel, RCMP officers, and the targets of the investigation. He did not, however, copy or summarize the administrative documents in the files. The Canadian authorities refused to permit defense counsel access to all the records, but defense counsel received the summaries, verbatim notes, and photocopies made by the AUSA of documents in the investigative file. The District Court found that the Canadian documents were not under the control of the prosecutor and that Froud, although he was working in cooperation with United States law enforcement officials, was not their agent. The Court ruled that the prosecution need not produce the Canadian documents and denied a defense motion to strike the testimony of the RCMP officers and of Stadel.

There is no doubt that the Government made substantial, good-faith disclosures under the Jencks Act. The Government disclosed all documents relating to this case that were ever in its own files. Moreover, the Government made available to defense counsel various materials in the possession of Canadian authorities, including the notebooks of the RCMP undercover officer, Froud, the daily diaries of the two RCMP officers assigned to the investigation, all original tape recordings of telephone conversations and meetings made as part of the investigation, and the notebook of the informant, Stadel. In fact, the only documents in the possession of the RCMP not produced or summarized by the AUSA were asserted to be administrative in nature and therefore arguably not "relate[d] to the subject matter as to which the witness has testified" within the meaning of 18 U.S.C. § 3500(b).[1] *See United States v.*

---

1. The Jencks Act provides, in relevant part:

    (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the

    possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall

*Augello,* 451 F.2d 1167, 1170 (2d Cir.1971), *cert. denied,* 405 U.S. 1070, 92 S.Ct. 1518, 31 L.Ed.2d 802 (1972). Nonetheless, for purposes of this appeal, we will assume, without deciding, that the documents not disclosed to defense counsel would have been subject to Jencks Act disclosure had the documents been in the files of United States law enforcement authorities.

The relevant language of the Jencks Act requires the United States to produce any pertinent statement of a prosecution witness "in the possession of the United States." 18 U.S.C. § 3500(b). We must decide whether the documents at issue, though in the physical possession of Canadian authorities, are nonetheless in the possession of the United States within the contemplation of the Act because the DEA directed the criminal investigation after the focus of the conspiracy shifted to the United States. Appellants contend that the documents are being held by the "agents" of the United States and therefore are in the constructive possession of the United States for purposes of the Act. Appellants point to the evidence of close cooperation between the United States and Canadian authorities, including American control of the later stages of the investigation.

The issue whether the Jencks Act applies in a federal prosecution to documents in the possession of a government other than the United States has thus far arisen primarily with regard to documents generated and held by *state* law enforcement officials. We have ruled that documents of local police are not subject to the Jencks Act, at least in the absence of a joint federal-state investigation. *United States v. Bermudez,* 526 F.2d 89, 100 & 100 n. 9 (2d Cir.1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976); *see United States v. Higginbotham,* 539 F.2d 17, 21 (9th Cir. 1976); *United States v. Smith,* 433 F.2d 1266, 1269 (5th Cir.1970), *cert. denied,* 401 U.S. 977, 91 S.Ct. 1206, 28 L.Ed.2d 328 (1971). The Tenth Circuit has reached the opposite result, expressing the view that it

will not permit the Government to "stand on technicality" and assert lack of "actual possession" as a basis for resisting a demand for disclosure of statements made to state officers. *United States v. Heath,* 580 F.2d 1011, 1018–19 (10th Cir.1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979). However, *Heath* appears to be qualified by two circumstances: The federal prosecutor had assured the trial court that he would assume responsibility for obtaining statements in the possession of state officials and there had been close cooperation between federal and state officials. *Id.* at 1018, 1019 n. 1. Our *Bermudez* decision appears to reserve the issue of Jencks Act coverage for documents in custody of state officials working in cooperation with federal officials. At least one court has considered such cooperation an insufficient basis for applying the Jencks Act to documents held by local police officers. *United States v. Harris,* 368 F.Supp. 697, 709 (E.D.Pa.1973), *aff'd without consideration of this point,* 498 F.2d 1164 (3d Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 665 (1974).

The one decision that squarely considered application of the Jencks Act to documents in the possession of a *foreign* government ruled the Act inapplicable. *United States v. Friedman,* 593 F.2d 109, 120 (9th Cir.1979). *Cf. United States v. Flores,* 540 F.2d 432, 437 (9th Cir.1976) (documents in possession of Mexican government not discoverable pursuant to Fed.R.Crim.P. 16(b)); *United States v. Cotroni,* 527 F.2d 708 (2d Cir.1975) (federal wiretapping statute, 18 U.S.C. § 2510, inapplicable to communications intercepted by Canadian officials in Canada), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976).

If there had been no cooperation between Canadian and United States officials in the pending case, we would not hesitate to follow the Ninth Circuit's *Friedman* decision and apply in the foreign context the ruling we made in *Bermudez* in the state

---

order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(b) (1982).

context. The fact of cooperation, however, makes the issue somewhat closer. *See United States v. Bermudez, supra*, 526 F.2d at 100 n. 9. We have previously explicitly reserved decision on the extent to which cooperation with foreign law enforcement officials may implicate *constitutional* restrictions, either on the theory that foreign officials were agents of American authorities, *see United States v. Busic*, 592 F.2d 13, 23 n. 7 (2d Cir.1978), or on the theory that a joint investigation might afford an opportunity for evading constitutional requirements applicable to United States officials, *see United States v. Bagaric*, 706 F.2d 42, 69 (2d Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983). And our decision in *Cotroni* may fairly be read to reserve the issue of the use of wiretap evidence when American officials participate with foreign officials conducting the taps. 527 F.2d at 712.

■ We believe that even in the course of a joint investigation undertaken by United States and foreign law enforcement officials the most the Jencks Act requires of United States officials in a good-faith effort to obtain the statements of prosecution witnesses in the possession of the foreign government. The investigation of crime increasingly requires the cooperation of foreign and United States law enforcement officials, but there is no reason to think that Congress expected that such cooperation would constitute the foreign officials as agents of the United States for purposes of the Jencks Act. In this case, the prosecutor's good faith in his efforts to secure Canadian documents is manifest. He secured copies of numerous documents and made summaries of others. Whatever was withheld reflects the preference of the Canadian authorities, not the reluctance of

the United States authorities. In the circumstances of this case, the Jencks Act did not require either production of the withheld documents or any limitation on the testimony of the Canadian witnesses.[2] We are not confronted with a situation where United States officials attended an interview of a prosecution witness and made no report of the interview, preferring a report to be made by a foreign official in the hope of avoiding Jencks Act production.

■ There is no merit to appellants' contention that the trial judge was obliged to travel to Canada to review the documents. No circumstance required him to inspect the documents, and his refusal to review them in Canada was not an abuse of discretion. *See United States v. Cotroni, supra*, 527 F.2d at 712.

## II.

■ Paternina-Vergara contends that he was impermissibly inculpated by the admission of portions of Reyes' post-arrest statement in violation of the rule of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which bars use at a joint trial of a non-testifying defendant's confession that inculpates a co-defendant, even if offered only against the declarant. The *Bruton* rule is not violated, however, when a co-defendant's confession is so similar to the defendant's confession that the two statements "interlock." *Parker v. Randolph*, 442 U.S. 62, 72–75, 99 S.Ct. 2132, 2138–2140, 60 L.Ed.2d 713 (1979); *United States ex rel. Catanzaro v. Mancusi*, 404 F.2d 296, 300 (2d Cir.1968), *cert. denied*, 397 U.S. 942, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970).

This [interlocking confession] doctrine does not require identity in statements.

---

**2.** We are unpersuaded by appellants' argument that a written agreement between the RCMP and the DEA, which expressly mentions the Jencks Act, somehow imposes a stricter standard of compliance with the Act. Paragraph 9 of the agreement, upon which the appellants rely, states in its entirety: "If correspondence from the [RCMP] is required in a United States court under the 'Jenks' [sic] law, the DEA will

notify the [RCMP] as soon as possible." This paragraph does not extend the reach of the Jencks Act. Moreover, the agreement itself appears to contemplate the type of arrangements undertaken in this case. Paragraph 10 reads: "The DEA may not use correspondence from the [RCMP] for court purposes without the express permission of [RCMP] Headquarters."

*United States ex rel. Ortiz v. Fritz,* 476 F.2d 37, 39 (2d Cir.), *cert. denied,* 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973). It is sufficient if the confessions are "substantially the same and consistent on the major elements of the crime involved." *United States ex rel. Stanbridge v. Zelker,* 514 F.2d 45, 49 (2d Cir.), *cert. denied,* 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975). Essentially, to be interlocking, the statements must describe the same crime. *United States v. Fleming,* 594 F.2d 598, 604 (7th Cir.), *cert. denied,* 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979). *Tamilio .v. Fogg,* 713 F.2d 18, 20 (2d Cir. 1983), *cert. denied,* — U.S. ——, 104 S.Ct. 706, 79 L.Ed.2d 170 (1984).

■ Applying this standard, we conclude that the statements of Reyes and Paternina-Vergara are interlocking despite some inconsistency as to details. We reject Paternina-Vergara's claim that Reyes' statement provided the only unequivocal evidence that Paternina-Vergara knew that he was transporting cocaine. In his own statement he provided evidence of his knowledge by stating that he was acting only as a transporter of narcotics and that he could not identify his source for fear of reprisal. Reyes' statement was surely not devastating to Paternina-Vergara in view of his pre-arrest statements to Froud that the other thirty-five kilos would be ready on Monday and that he could supply Froud with up to 200 kilos.

■ Paternina-Vergara also argues that, even if Reyes' statement could be used at a joint trial, the District Judge should have given a limiting instruction to the jury at the time of the admission of the statement, in addition to the limiting instruction that was included in the jury charge. Though not required by case law, a contemporaneous limiting instruction as to an interlocking confession admitted at a joint trial is advisable to guard against improper consideration against a co-defendant of a statement received in evidence as an exception to the *Bruton* rule. However, in the absence of a request by defense counsel, the lack of a contemporaneous limiting instruction was not error at all, much less a ground for reversal.

### III.

■ Appellant Reyes contends that the arresting officers did not have probable cause to arrest him and that his post-arrest confession should therefore have been suppressed. He bases this argument on the dubious assertion that nodding his head affirmatively in response to the question whether the thirty-five kilos would be ready Monday was an insufficient indication that he knew a drug transaction was taking place at the Executive Hotel. The District Court, however, did not rely on this fact alone but based its finding of probable cause primarily on three other facts: (1) Reyes arrived at the Executive Hotel with Paternina-Vergara in the automobile in which the cocaine was transported; (2) Reyes was present during conversations regarding the manner of delivery of the cocaine; and (3) Ganen indicated to a DEA agent that it was all right to speak in front of Reyes. These facts, together with Reyes' affirmative nod, were sufficient to permit an officer reasonably to conclude that Reyes was involved in the illegal transaction. *See Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) ("In dealing with probable cause, ... we deal with probabilities.").

### IV.

■ Chief Judge Curtin denied Reyes' severance motion because he determined that the confessions of Reyes and Paternina-Vergara were interlocking within the meaning of *Parker v. Randolph, supra.* Because we agree with this holding and because Reyes did not suffer substantial prejudice by reason of the joint trial, we conclude that the denial of the severance motion was not an abuse of discretion. *United States v. Ventura,* 724 F.2d 305, 312 (2d Cir.1983); *United States v. Weisman,* 624 F.2d 1118, 1129–30 (2d Cir.), *cert.*

*denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980).

For the foregoing reasons, the judgments of conviction are affirmed. The mandate shall issue forthwith.