18-3546(L)
United States v. Raheem Brennerman

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 9th day of June, two thousand twenty.

Present:    ROSEMARY S. POOLER,
            REENA RAGGI,
            WILLIAM J. NARDINI,
                    *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                    *Appellee*,

            v.                                                  18-3546, 19-497

RAHEEM BRENNERMAN,
AKA JEFERSON R. BRENNERMAN,
AKA AYODEJI SOETAN,

                    *Defendant-Appellant*.


Appearing for Appellant:     John C. Meringolo, Meringolo & Associates, P.C., Brooklyn, N.Y.

Appearing for Appellee:      Danielle R. Sassoon, Assistant United States Attorney (Nicholas Roos, Robert B. Sobelman, Matthew Podolsky, Assistant United States Attorneys, *on the brief*), *for* Geoffrey S. Berman, United

States Attorney for the Southern District of New York, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Sullivan, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment be and it hereby is **AFFIRMED**.

Defendant-Appellant Raheem Brennerman appeals from the February 12, 2019, amended judgment of conviction entered in the United States District Court for the Southern District of New York (Sullivan, *J.*), sentencing him principally to 144 months' imprisonment, 3 years' supervised release, forfeiture in the amount of $4,400,000, and restitution in the amount of $5,264,176.19. Following a jury trial, Brennerman was convicted of one count of conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349; one count of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2; one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; and one count of visa fraud, in violation of 18 U.S.C. § 1546(a). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

On appeal, Brennerman argues: (1) there was insufficient evidence to convict him on the conspiracy count, the substantive bank fraud count, and the substantive wire fraud count; (2) the government made an impermissible constructive amendment to the indictment; (3) the search warrant for Brennerman's Las Vegas apartment was unlawful; (4) the admission of the testimony of Julian Madgett violated Brennerman's constitutional rights; (5) the district court erred by applying a two-offense level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1; and (6) the district court incorrectly determined the restitution amount.

I.      **Sufficiency of the Evidence**

A defendant challenging the sufficiency of the evidence bears a "heavy burden," *United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004), as the standard of review is "exceedingly deferential," *United States v. Hassan*, 578 F.3d 108, 126 (2d Cir. 2008). Ultimately, "the task of choosing among competing, permissible inferences is for the [jury], not for the reviewing court." *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001).

Brennerman argues there was insufficient evidence to convict him of a conspiracy. He argues the jury could not have adduced the existence of an agreement because the record does not contain a single response from Peter Aderinwale, the purported co-conspirator with whom Brennerman corresponded over email. His argument is both factually and legally flawed. First, the record did contain two responsive emails from Aderinwale concerning draft emails to be sent to ICBC as part of the scheme. Second, a response from an alleged co-conspirator following conspiratorial communication is not legally necessary to establish the existence of a conspiracy. We agree with the government that a reasonable jury could infer the requisite intent from emails in which Brennerman solicited Aderinwale's input on aspects of the fraud scheme and from Brennerman's transfer of substantial scheme proceeds to Aderinwale. These facts would have supported the inference that Aderinwale was a co-conspirator, even in the absence of any email

2

response from Aderinwale. The jury would have been entitled to infer that Aderinwale's responses had been conveyed over the phone or in person. "This is so because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992) (internal quotation marks and citation omitted). Thus, viewing the evidence in the light most favorable to the government, we find there was sufficient evidence from which the jury could have reasonably inferred the existence of a conspiracy.

Brennerman also argues that there was insufficient evidence that he intended to defraud an institution insured by the Federal Deposit Insurance Corporation ("FDIC") as required for bank fraud, because most of the evidence offered at trial showed that he targeted the Industrial and Commercial Bank of China's London branch ("ICBC"), which is not FDIC-insured. Contrary to Brennerman's assertions, however, the record did establish that he defrauded Morgan Stanley, an FDIC-insured institution, as part of his broader scheme by, among other things, inducing it to issue him a credit card based on false representations about his citizenship, assets, and the nature and worth of his company. Indeed, the government argued just this theory on summation, asserting that Brennerman was guilty of bank fraud because "he engaged in a scheme to defraud Morgan Stanley" through lies told to a Morgan Stanley employee, which were "all part of an attempt to defraud an FDIC-insured institution." App'x at 1709-10. Defense counsel in summation also emphasized that Morgan Stanley was the sole FDIC-insured institution involved. And the district court instructed the jury on the proper elements of bank fraud, including the FDIC-insured institution element. Brennerman's challenge, therefore, is foreclosed by "the law's general assumption that juries follow the instructions they are given," which applied here would indicate that the jury properly accounted for the evidence related to Morgan Stanley when convicting Brennerman of the bank fraud count. *United States v. Agrawal*, 726 F.3d 235, 258 (2d Cir. 2013).

As to the wire fraud count, Brennerman argues there was insufficient evidence to establish a domestic violation of the statute. "[W]ire fraud involves sufficient domestic conduct when (1) the defendant used domestic mail or wires in furtherance of a scheme to defraud, and (2) the use of the mail or wires was a core component of the scheme to defraud." *Bascuñán v. Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019). We conclude that the evidence here was sufficient. The record at trial established that Brennerman used domestic wires to carry out the fraudulent scheme. Indeed, he concedes that he used telephone lines and email in the United States to make fraudulent representations in furtherance of the scheme. In addition, the account to which ICBC wired the loan money was a Citibank account within the United States, and Brennerman subsequently moved that money to domestic accounts. This is precisely the kind of use of domestic wires that we have held sufficient under the wire fraud statute. *See, e.g.*, *United States v. Kim*, 246 F.3d 186, 190 (2d Cir. 2001).

## II.    Constructive Amendment

An impermissible constructive amendment occurs only when the government's proof and the trial court's jury instructions "modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense

3

other than the one charged by the grand jury." *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir. 1996) (internal quotation marks and citation omitted).

Brennerman contends that the government constructively amended counts one and two of the indictment by proving a fraud against Morgan Stanley at trial—while the indictment, especially the speaking part, focuses on the fraud against ICBC. We disagree. It is clear from the indictment that the scheme against ICBC was merely one target of Brennerman's alleged fraud. The indictment alleged that Brennerman's scheme in fact targeted "several financial institutions around the world, including in the United States." App'x at 39. It also specifically alleged that Brennerman defrauded an FDIC-insured financial institution. The indictment did not limit the proof only to Brennerman's scheme against ICBC. While the indictment discusses ICBC activity at length, it makes clear that those allegations are illustrations, asserting that "[b]eginning in or about January 2013, [Brennerman] made similar [false] representations to other financial institutions in an effort to induce those institutions to provide financing to Blacksands Pacific and Blacksands Alpha." App'x at 42. At trial, the government offered evidence that Morgan Stanley was one of those "other financial institutions." *See* App'x at 608-09 (testimony of Morgan Stanley's Kevin Bonebrake about a January 2013 telephone call with Brennerman discussing financing to develop oil asset). Thus, there was not a "a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." *Vebeliunas*, 76 F.3d at 1290.

### III.   Search Warrant

Brennerman challenges the lawfulness of the search warrant of his Las Vegas apartment. Even assuming, for the sake of argument only, that the search warrant was unlawful, we conclude that the good faith exception to the Fourth Amendment's exclusionary rule would apply. We therefore need not address the propriety of the search warrant. The district court found that the law enforcement agents who executed the warrant reasonably relied on its terms in good faith, and Brennerman has not challenged this finding. Where, as here, evidence is obtained by police officers executing the search "in objectively reasonable reliance" on a warrant, the good faith exception to the exclusionary rule applies. *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (internal quotation marks and citation omitted).

### IV.   Testimony of Julian Madgett

Brennerman argues that Julian Madgett's testimony at trial violated due process and his Sixth Amendment rights to confrontation and compulsory process because he was unable to obtain certain exculpatory personal notes from Madgett, and the government would not turn the notes over or otherwise retrieve them from ICBC.

The government has an obligation under the Due Process Clause to make a timely disclosure of any exculpatory or impeaching evidence that is material and in its possession. *See Brady v. Maryland*, 373 U.S. 83 (1963); *see also Giglio v. United States*, 405 U.S. 150 (1972). Additionally, the Jencks Act provides that, "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b).

4

Brennerman's argument claiming constitutional violations as a result of Madgett's testimony is without merit. The government's discovery and disclosure obligations extend only to information and documents in the government's possession. *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (explaining that the *Brady* obligation applies only to evidence "that is known to the prosecutor"). The government insists that every document it received from ICBC was turned over to Brennerman and that it is not aware of the personal notes referenced by Brennerman. Therefore, the government has not violated its disclosure obligation. Nor was the government under any obligation under the Jencks Act to collect materials about Madgett that were not in the government's possession. *See United States v. Bermudez*, 526 F.2d 89, 100 n.9 (2d Cir. 1975).

Even if the documents exist and are material and favorable, Brennerman never sought a subpoena pursuant to Federal Rule of Criminal Procedure 17, never made a timely request for a deposition under Federal Rule of Criminal Procedure 15, and never asked the district court to issue letters rogatory pursuant to 28 U.S.C. § 1781 to obtain documentary evidence or secure testimony from the United Kingdom where ICBC maintains its records. The only indication that such documents are extant comes from Brennerman's bare assertions.

## V.     Sentence

At sentencing, the court applied a two-offense level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, a finding that relied on, as an alternative basis, Brennerman's false representations in his bail applications to the court. Brennerman argues that those misrepresentations cannot support an obstruction of justice enhancement because the misstatements "were at most minimally connected to the offense conduct in this case and did not obstruct the prosecution in any meaningful way." Appellant's Br. at 54. However, this argument has already been rejected by our Court in *United States v. Mafanya*, 24 F.3d 412, 415 (2d Cir. 1994) ("Appellant's false statement to a judicial officer (the magistrate judge) was an attempt to obstruct justice. Therefore, the district court properly Applied the [Section 3C1.1] enhancement . . . ."). Accordingly, the district court did not err in applying the enhancement.

## VI.    Restitution

The Mandatory Victims Restitution Act of 1996 ("MVRA") provides that "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). "[A]t sentencing, the government bears the preponderance burden of proving actual loss supporting a restitution order." *United States v. Rutigliano*, 887 F.3d 98, 109 (2d Cir. 2018). "[W]e review a district court's order of restitution under the MVRA for abuse of discretion." *United States v. Zangari*, 677 F.3d 86, 91 (2d Cir. 2012).

Brennerman argues that the district court improperly imposed restitution in the full amount of the $5 million ICBC loan even though Brennerman had already made a payment of $446,466.13. But the testimony at trial established that ICBC released approximately $4.4 million to Brennerman and the rest was used to finance loan servicing fees. The $446,466.13

5

paid to ICBC by Brennerman was an interest-only payment that did not reduce the $5 million principal owed. Therefore, ICBC's loss of $5 million as a result of the fraud was supported, and Brennerman points to nothing that undermines the district court's finding.

We have considered the remainder of Brennerman's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6